■ MARLENE GLUCK, Respondent-Appellant, v EMANUEL GLUCK, Appellant-Respondent.—In a matrimonial action, (1) the defendant husband appeals, (a) as limited by his notice of appeal and brief, from so much of a judgment of the Supreme Court, Rockland County (Meehan, J.), dated March 18, 1986, as directed him to pay maintenance of $200 per week for five years and child support of $150 per week, to maintain life insurance for his daughter and son for five years, respectively, and to maintain health benefits for his son, directed a distribution of the marital assets, and granted the plaintiff wife a first option to purchase the marital residence; (b) from an order of the same court, dated May 29, 1986, which, after a hearing, directed him to pay one half of the plaintiff's attorney's fees and expenses, in the amount of $9,192.21, and (c) from an order of the same court, dated September 18, 1986, which, *inter alia,* set the value of the marital residence at $190,000, and (2) the plaintiff wife cross-appeals from so much of the judgment of divorce, as (a) awarded her maintenance of only $200 per week for a period of only five years, and child support of only $150 per week, (b) awarded her only a 35% share of the defendant's pension and annuities, and (c) refused

to direct the defendant to pay for the parties' daughter's education.

Ordered that the judgment is modified, on the law and the facts, by (1) deleting the sixth decretal paragraph thereof, (2) deleting from the eighth decretal paragraph thereof the words "ten (10) consecutive years" and substituting therefor the words "until the age of emancipation", (3) deleting the ninth decretal paragraph thereof, (4) deleting from the fourteenth decretal paragraph thereof the words "Thirty-Three Thousand Five Hundred Twenty-Five and $62/100$ ($33,525.62)" and "thirty-five percent (35%)", and substituting therefor, respectively, the words "Thirty-Eight Thousand Seven Hundred Ten ($38,710)" and "forty-nine percent (49%)", (5) deleting from the fifteenth decretal paragraph thereof the words "Nineteen Thousand Nine Hundred Forty-Five and $62/100$ ($19,945.62)" and "thirty-five percent (35%)", and substituting therefor the words "Twenty Three Thousand Thirty ($23,030)" and "forty-nine percent (49%)", and (6) deleting from the sixteenth decretal paragraph thereof the words "Two Thousand Fifty-Six and $42/100$ ($2,056.42)" and substituting therefor the words "Four Thousand One-Hundred Twelve and $56/100$ ($4,112.56)"; as so modified, the judgment is affirmed insofar as appealed from, without costs or disbursements; and it is further,

Ordered that the order dated May 29, 1986, is affirmed, without costs or disbursements; and it is further,

Ordered that the order dated September 18, 1986, is affirmed, without costs or disbursements.

The court properly concluded that the plaintiff was entitled to $200 per week in maintenance for a period of five years and $150 per week in child support. It was improper, however, for the court to credit the defendant in the amount of $10 per week for every $1,000 earned by the parties' son. This court has expressed an unwillingness to uphold comparable escalation provisions, holding, instead, that such issues are best left to modification proceedings (see, e.g., Breen v Breen, 99 AD2d 539, 540).

We further conclude that it was error for the court to direct the defendant to maintain a life insurance policy for the parties' daughter, who attained the age of 21 approximately three months subsequent to the trial. Such special relief provided for in Domestic Relations Law § 236 (B) (8) clearly does not apply to an emancipated son or daughter (see, West v West, 115 AD2d 539, 540). It was also error, therefore, for the

court to direct the defendant to maintain a life insurance policy for the duration of 10 years for the parties' son Jeffrey, who was 15 years old at the time of trial. Pursuant to Domestic Relations Law § 236 (B) (8), the obligation to maintain life insurance ceases simultaneously with the obligation to provide child support.

The trial court incorrectly calculated that portion of the defendant's retirement benefits representing marital property at 90%. Pursuant to the equation provided for in *Majauskas v Majauskas* (61 NY2d 481), we conclude that 98% of the present benefits constitute marital property. In addition, based upon the parties' marriage of 22 years and their equal contributions thereto, we further conclude that the plaintiff was entitled to 50% of the portion of the benefits representing marital property *(see, e.g., Neumark v Neumark,* 120 AD2d 502, 504, *lv dismissed* 69 NY2d 899; *Bisca v Bisca,* 108 AD2d 773, *appeal dismissed* 66 NY2d 741). However, we cannot conclude that the court erred in failing to take into consideration the defendant's tax liability on the pension and annuities. While this court has recognized that the value of a pension should be discounted by the amount of income tax required to be paid by a party *(see, Tereszkiewicz v Tereszkiewicz,* 128 AD2d 605), where the party seeking the discount fails to present any evidence from which the court could have determined the dollar amount of the tax consequences, as in the case at bar, the computation of the award without regard to tax consequences will be deemed proper *(see, Povosky v Povosky,* 124 AD2d 1068). Moreover, contrary to the defendant's contentions, and in keeping with this court's preference for awarding a lump-sum payment where practicable *(see, Tereszkiewicz v Tereszkiewicz, supra; Damiano v Damiano,* 94 AD2d 132), we conclude that the court properly directed that the plaintiff's share of the benefits be awarded in a lump-sum payment, especially in light of the fund which will be created by the sale of the parties' other marital assets.

With respect to arrears, the defendant owed $5,600. At the trial, the defendant attempted to show that pursuant to an income execution, he had already paid $2,687.11 and should have been credited for that amount. While the defendant's pay stubs introduced into evidence support this figure, the plaintiff offered evidence that she had not received any of the money, and there was testimony that the County Sheriff had collected only $875.06. Pursuant to CPLR 5209: "A person who, pursuant to an execution or order, *pays or delivers,* to the judgment creditor or a *sheriff* or receiver, money or other

personal property in which a judgment debtor has or will have an interest, or so pays a debt he owes the judgment debtor, *is discharged from his obligation to the judgment debtor to the extent of the payment or delivery"* (emphasis added).

It is clear that the amount of $875.06 must be credited to the defendant. With respect to the remaining money, which has not been accounted for, the defendant cannot receive a credit, since a garnishee is not relieved from his obligation until the Sheriff has the property in his hands. Should the defendant choose to, he can apply to the court for a credit if he can establish that the remaining money has been paid to the Sheriff. We also find it appropriate to credit the defendant in the amount of $3,000, which represents separate property in the form of a bank account which he brought into the marriage, and in the amount of $237.50, which represents that portion of a check paid by the defendant to the plaintiff for appraisals which were not used for those purposes.

We cannot agree with the trial court, which credited the defendant for $1,500 in payments made to the plaintiff, since these payments represented a willful flouting of a court order *(see, Rodgers v Rodgers,* 98 AD2d 386, 390, *appeal dismissed* 62 NY2d 646; *Wolf v Wolf,* 50 AD2d 740). We further conclude that none of the payments made by the defendant for the carrying charges on the parties' Florida condominium, the marital residence, or the parties' credit card accounts, can be used to offset any of his liabilities to the plaintiff.

We have examined the parties' remaining contentions and find them to be without merit. Thompson, J. P., Weinstein, Rubin and Harwood, JJ., concur.