■ ANNE E. VICINANZO, Respondent-Appellant, v VINCENT E. VICINANZO, Appellant-Respondent. [598 NYS2d 362] —Yesawich Jr., J. (1) Cross appeals from a judgment of the Supreme Court (White, J.) ordering, *inter alia,* equitable distribution of the parties' marital property, entered June 20, 1991 in Montgomery County, upon a decision of the court, and (2) appeals from three orders of said court, entered August 12, 1991, September 6, 1991 and October 17, 1991 in Montgomery County, which, *inter alia,* partially granted plaintiff's motions for maintenance arrears, counsel fees and contempt.

The parties were married in 1958 and have seven adult children. Defendant, a sole practitioner, owns and operates a successful law practice in the City of Amsterdam, Montgomery County; plaintiff, who gave up a budding teaching career at the time of the parties' marriage, has been a full-time homemaker and caretaker for the children since then. Plaintiff commenced this action for a divorce on October 30, 1987; simultaneously, she moved for interim maintenance, child support for the parties' youngest child, Matthew, who was then 17 years old, and counsel fees. Defendant opposed the motion, but prior to its return date gave plaintiff a check for $100,000. In view of this payment, Supreme Court denied plaintiff's motion, but in its order dated November 13, 1987 directed that plaintiff use "a reasonable portion" of the $100,000 "in lieu of a further pendente lite monetary award at this juncture". Plaintiff utilized approximately $63,000 of this sum to cover the expenses of operating the household for herself and Matthew during the next 13 months. On November 29, 1988, plaintiff moved again for temporary maintenance and counsel fees and, on April 11, 1989, Supreme Court ordered defendant to pay $4,000 per month, as maintenance, until the case was finally adjudicated. Although this award was made retroactive to December 20, 1988, the order also provided that such retroactive amounts would be determined at trial; a clarifying order, dated June 14, 1989, alludes to the possibility that defendant may seek credit for previous payments. Defendant began making monthly payments in June 1989 and the record indicates that the last payment was made in April 1991.

After defendant withdrew his answer and stipulated to a divorce on the grounds specified by plaintiff, a bench trial, at which plaintiff and defendant testified at length, was held on

the issues of equitable distribution and maintenance. Plaintiff also presented expert testimony as to the value of defendant's law practice. When defendant sought to call his own expert to testify on the subject, however, plaintiff objected on the grounds that the expert's qualifications and the substance of his opinions had not been disclosed pursuant to plaintiff's ongoing request under CPLR 3101 (d). Supreme Court reserved judgment on the motion and heard the expert's testimony; the court ultimately ruled in plaintiff's favor and refused to consider the substance of the testimony in arriving at its decision.

A final judgment, entered on June 20, 1991, distributed the parties' property essentially equally, and awarded plaintiff $3,000 in temporary maintenance arrears, permanent maintenance of $500 per week, beginning on June 10, 1991, and counsel fees of $40,000. Both parties appeal.

As reflected in orders entered August 12, 1991 and September 6, 1991, plaintiff subsequently successfully moved for payment of permanent maintenance arrears and was awarded counsel fees of $1,200. On October 17, 1991, plaintiff secured an order holding defendant in contempt for failing to transfer certain bonds to her, as unequivocally directed in the equitable distribution judgment. As a consequence, defendant was found in contempt and was directed to turn over the bonds along with the sum of $383,612, the amount still due as part of the equitable distribution of property, and plaintiff was awarded an additional $1,200 in counsel fees. Defendant appeals these orders.

Four issues involving maintenance and child support have been raised by the parties: both parties assert that Supreme Court's determination of the amount of temporary maintenance arrears was incorrect (defendant claims that no arrears are due, and plaintiff claims that the true amount owed is greater than that awarded by the court); defendant questions the propriety of the court's award of permanent, nondurational maintenance in the amount of $500 per week and the counsel fees awarded to plaintiff; and plaintiff contends that the court erred in failing to provide child support for Matthew during the pendency of the action and also in failing to order defendant to pay for Matthew's college education beyond his 21st birthday.

Initially, we note that because the final order and judgment in this action finally determine the amount of arrearages due under the pretrial orders, the issues of interim maintenance

and child support addressed by those orders are reviewable at this time *(see,* CPLR 5501 [a] [1]).

With regard to maintenance pendente lite, Supreme Court calculated the amount of maintenance due from December 20, 1988—the date on which Supreme Court had indicated the $4,000 payments were to begin—until the beginning of the trial to be $68,000, and subtracted the $65,000 plaintiff a-verred she had received during that time, concluding that defendant owed $3,000 in arrears. Defendant argues that he should have been given credit for the $100,000 payment he made at the commencement of the action, or at least for that portion of the $100,000 which exceeds the "reasonable portion" plaintiff was permitted to spend pursuant to the court's November 13, 1987 order. Given that Supreme Court, in its clarifying order of June 14, 1989, explicitly reserved the determination of arrears, as well as defendant's claims for credit for prior payments made, until the trial, the court should have taken into consideration the fact that plaintiff admittedly had approximately $37,000 of the $100,000 at the time she moved for interim relief in November 1988. Even assuming that the entire $63,000 spent by plaintiff between October 1987 and November 1988 was "reasonable", defendant should still receive credit for the remaining $37,000 *(see, Berge v Berge,* 159 AD2d 960, 961; *Gluck v Gluck,* 134 AD2d 237, 240).

The record shows that defendant paid a total of $92,000 between June 1989 and April 1991, and that the total amount due under the second temporary maintenance order, which should have directed that its obligation was to begin on November 29, 1988, the date plaintiff moved for interim relief *(see, Berge v Berge, supra,* at 961)—was $124,000 (31 payments of $4,000 each). Thus, when defendant is given credit for the $37,000 which he previously paid, there is no arrearage due.

The child support issue lacks substance. The November 1987 order did not specify what portion of the $100,000 was attributable to child support; it simply directed that a reasonable portion of the entire amount be used "in lieu of a further pendente lite monetary award", presumably to cover both the maintenance and child support which plaintiff had requested. However, inasmuch as the needs of both plaintiff and her son, who was then still a minor, were apparently fully satisfied during the period from October 1987 until December 1988 from the $100,000, no further award of child support is necessary to cover this time period.

As for the $4,000 payments made pursuant to the second

motion for interim relief, we note that although plaintiff presented proof of Matthew's expenses along with her own, she did not specifically request an award of temporary child support at that juncture. Although the courts are bound to provide for dependent children, pending litigation, if it appears that such provision is necessary to meet their reasonable needs (see, Domestic Relations Law § 236 [B] [7] [a]), there is no indication that plaintiff was unable to meet Matthew's needs during the pendency of the action. Thus, Supreme Court did not err in failing to order separate payments for child support at that time, or in failing to apportion the amount ordered between maintenance and child support.

Moreover, in view of the fact that defendant paid all of the couple's joint income taxes for 1987 and 1988 and gave plaintiff money with which to pay her taxes in 1989 and 1990, no purpose would be served by directing an apportionment for tax purposes, as requested by plaintiff.

Plaintiff next asserts that because there are "special circumstances", including the fact that Matthew's siblings have all attended college and that defendant is well-situated financially to pay for a college education, defendant should be required to pay for Matthew's tuition, room and board beyond his 21st birthday. As this case clearly presents all three of the special circumstances which bear on a parent's obligation to finance a child's education (see, Matter of Healey v Healey, 190 AD2d 965, 968), the issue to be confronted is whether, absent a prior arrangement between the parents, that obligation extends beyond the child's 21st birthday. Although we have certainly suggested, in dicta, that such an obligation may be found when there are special circumstances (see, e.g., Graham v Graham, 175 AD2d 540, 542; Niles v Niles, 126 AD2d 874, 875), a recent holding of the Court of Appeals compels us to now conclude that the law of New York does not permit such an inference (see, Bani-Esraili v Lerman, 69 NY2d 807, 808). Thus, Supreme Court was quite correct in refusing to extend defendant's obligation to support Matthew beyond his 21st birthday.

Defendant's contrary view notwithstanding, defendant is not entitled to any credit, vis-à-vis the equitable distribution of the parties' property or plaintiff's permanent maintenance payments, for the amounts paid toward Matthew's college tuition, room and board after his support obligation ceased. Because the financing of his education became Matthew's responsibility at that time, such payments should be considered as if made to him, not to plaintiff.

Finally, we concur in Supreme Court's observation that in view of plaintiff's age and lack of marketable skills, it is unlikely that she will be able to become self-supporting; there is therefore no reason to disturb the award of permanent maintenance *(see, Verrilli v Verrilli,* 172 AD2d 990, 993, *lv denied* 78 NY2d 863; *Schnee v Schnee,* 152 AD2d 665, 666). Supreme Court considered all of the statutory factors, including the assets it distributed to plaintiff and the income they are expected to produce, in arriving at the amount of maintenance. Considering the parties' lavish preseparation standard of living and defendant's ample income, we do not find the amount to be so extravagant as to constitute an abuse of discretion. Neither was the award of counsel fees improper; although plaintiff was awarded substantial assets, the income from those assets was factored into the court's determination of the amount of maintenance awarded, and hence it would be unreasonable to expect plaintiff to deplete those resources when defendant has excellent prospects for continued earnings far in excess of what plaintiff has been granted.

The awarding of counsel fees is to a great degree a matter of the trial court's discretion *(see,* Domestic Relations Law § 237 [a]; *DeCabrera v Cabrera-Rosete,* 70 NY2d 879, 881), and as long as appropriate factors have been considered and the award is not clearly unjustified, we will not adjust it. The mere fact that plaintiff may have been able to pay her own fees is but one factor to be considered by the court *(see, Wexler v Wexler,* 162 AD2d 326, 327). Furthermore, Supreme Court apparently awarded plaintiff the portion of her fees which it found to have been occasioned by defendant's dilatory conduct, a retribution which is entirely proper *(see, Brennen v Brennen,* 148 AD2d 487, 488).

We now turn to the issues raised with respect to the distribution of the parties' marital property, which was valued at approximately $2.6 million. Supreme Court in a well-conceived decision attempted to make an even division of the considerable assets acquired by the parties during their marriage; both parties challenge specific aspects of that distribution. Defendant argues that the court erred in excluding his expert's testimony as to the value of the law practice, that it exceeded its authority by attempting to value the practice without the aid of expert testimony, and that the court's failure to consider the tax consequences of the distribution rendered it unfair. Plaintiff takes no issue with the valuation of the law practice, but maintains that it was error for the court to disregard the interest earned on the couple's cash

assets between the commencement of the action and the trial, and the interest and other accumulations earned by all of the marital assets between trial and judgment.

Initially, we note that Supreme Court's decision to strike the testimony of defendant's expert was not an abuse of discretion. The record indicates that plaintiff disclosed that she intended to call an expert witness, and the substance of his testimony, prior to trial. Defendant's excuse for failing to engage the services of an expert until late in the trial is somewhat disingenuous. Moreover, defendant proffered no explanation whatsoever for his failure to disclose the credentials and expected testimony of his witness during the brief period after he was hired, but before he was called to the stand. The requirements of CPLR 3101 (d) having been blatantly disregarded, Supreme Court was fully justified in precluding the testimony (see, Corning v Carlin, 178 AD2d 576, 577; Zarrelli v Littaur Hosp., 176 AD2d 1181, 1181-1182).

In valuing an enterprise such as a law practice, expert testimony obviously can be helpful to the court in determining the value; it is not, however, the only basis on which the court can rest such a finding (see, Bidwell v Bidwell, 122 AD2d 364, 366). If the record is developed sufficiently, the court can determine value, even where, as here, the expert's opinion is found unacceptable (see, Siegel v Siegel, 132 AD2d 247, 252, appeal dismissed 71 NY2d 1021, lv denied 74 NY2d 602). If no evidence of value is tendered, an average year's earnings may be representative of a reasonable estimate of the business's value (see, Griffin v Griffin, 115 AD2d 587, 588).

Here, Supreme Court valued defendant's law practice at $193,723. This figure approximates defendant's average annual earnings, as reflected on his Federal income tax returns of $161,339 in 1984, $204,517 in 1985, $208,919 in 1986 and $200,184 in 1987. The difficulty with this valuation lies in the fact that in 1983 a single personal injury case generated an unusually large, nonrecurring, fee, a portion of which—$163,900 —was included in defendant's income during the period from 1984 through 1987. Defendant argues, and we agree, that this unusual fee should have been excluded when calculating the value of his practice (cf., Sommer v Sommer, 176 AD2d 1022, 1024). When the $163,900 is subtracted from the income-averaging calculation, the resulting average is decreased from $193,723 to $152,748. Thus, on remittal, the distribution should be adjusted, taking this more accurate valuation into consideration.

Defendant next contends that he should have received

credit for a $107,000 payment made to plaintiff on May 1, 1989 during the pendency of the action. There was ample testimony to the effect that this payment merely represented plaintiff's equal share of approximately $248,000 in certificates of deposit, which matured between commencement of the action and trial, after amounts were subtracted for taxes and for expenses incurred by defendant for the wedding of one of the parties' children. That the $248,000 was not identified by the court as among the marital property distributed is of no moment, for the share of these proceeds retained by defendant cancels out the payment made to plaintiff and, hence, no credit is necessary. And, although plaintiff argues that she never consented to paying for the wedding, the record evidence readily allows for a contrary inference.

With regard to the tax consequences of the distribution of defendant's pension—he urges that it was error for Supreme Court to consider him as having received the full value of the pension without reducing that value by the amount which he will be taxed when the funds are paid out—and the possible capital gains tax to be paid when his stocks are sold, we note that defendant tendered no evidence of these tax consequences and, therefore, the court's failure to consider them was not error (see, Simmons v Simmons, 159 AD2d 775, 777).

Finally, to the extent that plaintiff claims that Supreme Court erred in failing to distribute the interest earned by the parties' substantial cash holdings, which were maintained in interest-bearing accounts during the pendency of the action, we agree. It is undisputed that where, as here, property is not actively managed by either party, but merely appreciates due to market forces or the like after commencement of the action, such appreciation is also considered marital property and is to be equitably distributed (see, Brennan v Brennan, 103 AD2d 48, 54; see also, Glass v Glass, 177 AD2d 807, 808). Rather than allow defendant to keep all of the interest earned by these assets between the commencement of the action and the trial, Supreme Court should have divided this income equally between the parties.

Plaintiff also argues that she should have received a share of the interest and dividends earned by the parties' stocks and bonds between the trial and the judgment. Inasmuch as plaintiff was awarded the bonds, we agree that she should also receive the interest earned thereon from the date of valuation until she actually received the bonds. Although plaintiff argues that a portion of this appreciation was not factored into the original distribution nor awarded as part of the judgment

on her contempt motion, the record is not sufficiently clear to enable us to determine whether this is so. Remittal for the purpose of clarifying this issue is therefore also required.

We find no merit in the parties' other arguments.

Mikoll, J. P., Mercure and Crew III, JJ., concur. Ordered that the judgment is modified, on the law and the facts, without costs, by reversing so much thereof as awarded equitable distribution of the parties' marital property; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed. Ordered that the orders entered August 12, 1991 and September 6, 1991 are affirmed, without costs. Ordered that the order entered October 17, 1991 is modified, on the law, without costs, by reversing so much thereof as permitted defendant to avoid payment of a $7,500 fine to plaintiff upon transfer of certain municipal bonds to plaintiff within 10 days of the date of said order; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.