■ Marcia A. White, Appellant-Respondent, v Algird F. White, Jr., Respondent-Appellant. [611 NYS2d 951] —White, J. Cross appeals from an amended judgment of the Supreme Court (Kahn, J.) ordering, *inter alia,* equitable distribution of the parties' marital property, entered March 30, 1993 in Albany County, upon a decision of the court.

When the parties were married on December 28, 1968, defendant was a senior in college and plaintiff was employed as a nurse. Plaintiff continued in this employment until July 1969 when the parties' first child was born. In the fall of 1969, defendant started law school. This endeavor was financed by defendant's parents along with moneys the parties earned during the summer months. Following graduation, defendant secured employment in the fall of 1972 with a prestigious law firm in the City of Albany. He became a partner in 1977 and continued with the firm until August 1983, when he left to form a partnership with another attorney. In 1988, this partnership merged with another firm to form the law firm with which defendant is presently associated.

In addition, defendant became a partner in Sevix Associates (hereinafter Sevix), whose principal asset is the ownership in condominium form of the sixth and seventh floors of a build-

ing at 540 Broadway in the City of Albany which is where defendant's law office is located. He is also a partner in East Ridge Associates (hereinafter East Ridge), which is undertaking a real estate development project. Each partnership has incurred substantial debt, i.e., $3,200,000 for Sevix and $2,650,000 for East Ridge, which defendant has personally guaranteed. This, however, has not had any impact on his personal finances as the record shows that Sevix has been making timely monthly payments of $9,176 which will retire its debt in 1997. As to East Ridge, there is no proof that it has been unable to meet its obligations nor is there any indication that it will not be able to do so.

While defendant's career was advancing, his family was expanding with the birth of three more children born in 1975, 1976 and 1981. The advancement of defendant's career allowed the parties to enjoy a lavish lifestyle that included an expensive home, a winter vacation condominium, furs, valuable watches and a Porsche automobile. They were also able to provide their children with private secondary educations, ballet instructions and private tennis and ski lessons. Concomitantly, they amassed substantial debts, specifically $133,858 in marital debt (exclusive of mortgages and automobile loans).

The parties' marital difficulties culminated in plaintiff commencing this action for divorce on April 2, 1990, to which defendant responded by counterclaiming for divorce. Following a nonjury trial, Supreme Court granted the parties mutual divorces, awarded plaintiff maintenance and child support, distributed the marital property, and denied plaintiff's application for counsel and expert fees. These cross appeals ensued.

The first point of contention centers on Supreme Court's evaluation of defendant's interest in his law firm and the distribution of 15% of this asset to plaintiff. Supreme Court accepted the opinion of plaintiff's expert that, pursuant to the capitalization of earnings approach, defendant's interest as of April 2, 1990 had a value of $431,000. In contrast, defendant's expert, utilizing the net asset approach, fixed the value at $19,409. Parenthetically, we note that because defendant's professional practice is well established, the valuation of his license is not an issue as it is deemed to have merged and been subsumed by the practice (see, McSparron v McSparron, 190 AD2d 74, 80-81).

The capitalization of earnings method is appropriate to use when evaluating a law practice and is apt to more accurately reflect its value than the net asset method (see, Nehorayoff v

*Nehorayoff,* 108 Misc 2d 311; Annotation, *Valuation of Good-will in Law Practice for Purposes of Divorce Court's Property Distribution,* 77 ALR4th 683). Thus, Supreme Court did not abuse its discretion in rejecting defendant's evaluation. Supreme Court, however, should also not have accepted the opinion of plaintiff's expert because it was flawed in several respects. First, plaintiff's expert fixed defendant's 1989 salary at $300,503, overlooking the fact that it included compensation for four months of 1988 and a $60,000 payment for furniture that defendant contributed to the firm. The record also discloses that the adjustments by plaintiff's expert for rental expenses and professional fees incurred in 1989 were erroneous.

Inasmuch as we may render the judgment we find warranted by the facts, we need not remit this issue to Supreme Court because the record is sufficiently developed to permit us to ascertain the value of defendant's interest pursuant to the capitalization of earnings method *(see, Northern Westchester Professional Park Assocs. v Town of Bedford,* 60 NY2d 492, 499; *Vicinanzo v Vicinanzo,* 193 AD2d 962, 967). Pursuant to this method, we calculate that defendant's interest in his law firm as of April 2, 1990 had a value of $221,691.[1]

Furthermore, we agree with plaintiff that Supreme Court erred by awarding plaintiff only 15% of this asset. In light of the fact that this was a long-term marriage, that plaintiff made financial contributions to the marriage during its early years and assumed the primary responsibility for raising the children while defendant pursued his career, she should be awarded 50% of this asset which translates into a distributive award of $110,846 *(see, Elmaleh v Elmaleh,* 184 AD2d 544, 546; *Harmon v Harmon,* 173 AD2d 98; *Stempler v Stempler,* 143 AD2d 410, *lv dismissed* 74 NY2d 715, *lv denied* 75 NY2d 709). This distributive award shall be payable to plaintiff in 60 monthly installments with interest, with the first payment to be made on July 1, 1994 *(see, Chirls v Chirls,* 170 AD2d 641, 643, *lv denied* 78 NY2d 853).

We turn now to plaintiff's challenge to Supreme Court's decision to confine its calculation of defendant's child support obligation to the first $80,000 of the parties' combined income. When the combined income exceeds $80,000, the court may apply the statutory percentage to the amount over $80,000 or may consider the factors set forth in Domestic Relations Law § 240 (1-b) (f) *(see,* Domestic Relations Law § 240 [1-b] [c] [3]).

1. Our calculations are found in Appendix 1.

While Supreme Court apparently considered the foregoing factors, it did not provide an explanation of why it would be unjust or inappropriate to impose a child support obligation on the income above $80,000 (see, Kessinger v Kessinger, 202 AD2d 752, 754). Moreover, Supreme Court should not have provided for automatic reductions of child support upon the emancipation of each child because the future needs of the unemancipated children cannot be accurately assessed at this point (see, Rubenstein v Rubenstein, 155 AD2d 522, 523). Accordingly, for these reasons, we will remit this matter to Supreme Court.

On the related issue of maintenance, in view of the parties' marital standard of living and the fact that defendant earns in excess of $200,000 annually, we shall not disturb Supreme Court's award of $750 per week in maintenance to plaintiff. Its decision to limit the duration of maintenance to 10 years, however, requires further exposition.

As the result of the amendment made in 1986 to Domestic Relations Law § 236 (B) (6), a court must construe the "reasonable needs" of the spouse receiving maintenance in relation to the parties' standard of living established during the marriage (L 1986, ch 884, § 4). The purpose of the amendment is to insure that a homemaker from a long-term marriage whose ability to find suitable employment following divorce is limited does not experience a standard of living decrease while the other spouse's standard of living remains constant or improves (see, Sperling v Sperling, 165 AD2d 338, 341-342; Garrison, Good Intentions Gone Awry: The Impact of New York's Equitable Distribution Law on Divorce Outcomes, 57 Brook L Rev 621 [1991]).

Because Supreme Court found that plaintiff will be "unable to be self-supporting in the manner and lifestyle to which she has been accustomed during the marriage and which she should continue to enjoy", its limitation on the duration of maintenance is not in accord with the intent of the amendment of Domestic Relations Law § 236 (B) (6). Therefore, we will modify the judgment by providing that defendant's obligation to provide maintenance shall continue until the death of either party or upon plaintiff's remarriage, or until it is modified by court order (see, Vicinanzo v Vicinanzo, 193 AD2d 962, 966, supra).

We note that the awards of maintenance and child support must be made retroactive to April 2, 1990 (see, Koczaja v Koczaja, 195 AD2d 693, 693-694; Lauria v Lauria, 187 AD2d 888; Beach v Beach, 158 AD2d 848). On remittal, Supreme Court must determine if there are any retroactive amounts of

maintenance and/or child support due and shall direct the manner of payment of such sums (see, Domestic Relations Law § 236 [B] [6], [7]). Now that plaintiff will receive lifetime maintenance, we will not disturb Supreme Court's decision not to distribute any portion of defendant's retirement accounts to her.

Lastly, given the great disparity between the incomes of the parties and the fact that plaintiff is not receiving a lump-sum distributive award, Supreme Court abused its discretion in not awarding plaintiff counsel and expert fees (see, Maher v Maher, 196 AD2d 530, 532). Due to the fact that Supreme Court did not afford defendant a hearing, we cannot determine this issue and must remit it to Supreme Court (see, Foster v Foster, 154 AD2d 334, 335-336).

Mercure, J. P., Casey and Weiss, JJ., concur. Ordered that the amended judgment is modified, on the law and the facts, without costs, by (1) valuing defendant's interest in his law firm at $221,691 and determining plaintiff's distributive award of that amount to be 50% or $110,846, payable to plaintiff in 60 monthly installments, with interest, commencing on July 1, 1994, (2) deleting those provisions dealing with child support which reduce defendant's obligation upon emancipation of the children, (3) deleting the provision dealing with maintenance which limits defendant's obligation to "the expiration of 10 years from the date of this judgment" and substituting therefor the phrase "until it is modified by court order", and (4) providing that the awards for child support and maintenance are retroactive to April 2, 1990; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

## APPENDIX 1

### COMPUTATION OF DEFENDANT'S SHARE OF EXCESS EARNINGS SUBJECT TO CAPITALIZATION AT 33⅓% FOR THE CALENDAR YEARS ENDING DECEMBER 31, 1989 and 1990

| Calendar Year Ending | Net Excess Earnings[2] | Weighting Factor[3] | Weighted Net Excess Earnings |
|---|---|---|---|
| December 31, 1989 | $91,403 | 1 | $ 91,403 |
| December 31, 1990 | $65,144 | 2 | $130,288 |

2. See Appendix 2.
3. See testimony of respondent's expert, Record on Appeal, at R2442.

| | |
|---|---|
| Total Weighted Net Excess Earnings | $221,691 |
| Average Weighted Net Excess Earnings (Divided by 3) | $ 73,897 |
| Excess Earnings Capitalized @ 33⅓% (Multiple of 3) | $221,691 |

## APPENDIX 2

### COMPUTATION OF DEFENDANT'S SHARE OF EXCESS EARNINGS FOR THE CALENDAR YEARS ENDING DECEMBER 31, 1989 and 1990

| | 1990 | 1989 |
|---|---|---|
| Adjusted Net Income (Loss)[4] | $ 47,944 | $428,930 |
| Defendant's Share (32.26%) | $ 15,467 | $138,873 |
| Salary to Defendant | +$258,310 | +$180,372 |
| Defendant's Adjusted Gross Income | $273,777 | $319,245 |
| Less Reasonable Compensation (5% Inflation for 1990)[5] | −$159,600 | − $152,000 |
| Defendant's Gross Excess Earnings Before Provision for Taxes | $114,177 | $167,245 |
| Less Tax Costs, Estimate at 38.5% | −$ 43,958 | −$ 64,389 |
| Defendant's Earnings Before Fair Rate of Return on Net Tangible Assets | $ 70,219 | $102,856 |
| Less Fair Rate of Return on Net Tangible Assets[6] | $ 5,075 | $ 11,453 |
| Defendant's Net Excess Earnings | $ 65,144 | $ 91,403 |

4. See Appendix 3.
5. See Respondent's Brief, at 38; see also Record on Appeal, at R2418, R2420.
6. See Record on Appeal, at R2836.

## APPENDIX 3

### COMPUTATION OF PARTNERSHIP'S ADJUSTED NET INCOME FOR THE CALENDAR YEARS ENDING DECEMBER 31, 1989 and 1990

|  | 1990 | 1989 |
|---|---|---|
| Net Income (Loss) Per Financial Statements | $(190,029) | $273,605 |

**Adjustments**

| | | 1990 | 1989 |
|---|---|---|---|
| Add: | Actual Occupancy Expenses, of Sublease Rental | $ 461,561 | $364,513 |
| Add: | Nonrecurring Professional Fees | +$ 43,200 | +$ 57,600 [7] |
| | | $ 504,761 | $422,113 |
| Less: | Reasonable Occupancy Expenses | $ 266,788 | $266,788 [8] |
| | | $237,973 | $155,325 |
| | Total Adjustments Net Income | $(190,029) | $273,605 |
| | Adjusted Net Income (Loss) | $ 47,944 | $428,930 |

7. $72,000 expense for professional fees amortized over five years.
8. Figure from defendant's expert.