[820 NYS2d 547]

CHAHEE PICKARD, Appellant-Respondent, v TODD S. PICKARD, Respondent-Appellant.

First Department, August 10, 2006

APPEARANCES OF COUNSEL

*Blank Rome, LLP,* New York City (*Leonard G. Florescue* and *Rachel Wilgoren* of counsel), for appellant-respondent.

*Krol & O'Connor,* New York City (*Igor Krol* of counsel), for respondent-appellant.

## OPINION OF THE COURT

SAXE, J.

The judgment on appeal, bringing up for review the provisions of the order after trial, as amended, properly resolved, in large part, the distribution of the marital estate and issues of spousal support. However, in a few specifics we disagree with the trial court, and therefore, as explained below, modify and remand the matter at to those points. Of particular concern is the court's approach to valuation and distribution of a holding company which owns occupied rent-controlled or rent-stabilized Manhattan apartments.

■ Initially, the distribution of the amounts in the parties' various bank accounts was properly directed as of the commencement date of the action. Defendant's retirement accounts, which were held in the form of securities, were properly valued as of or close to the date of trial since they were passive assets (*see Finkelstein v Finkelstein,* 268 AD2d 273, 273 [2000], *lv denied* 96 NY2d 703 [2001]; *Heine v Heine,* 176 AD2d 77, 87 [1992], *lv denied* 80 NY2d 753 [1992]). Lifetime maintenance of $3,500 per month was appropriately awarded in view of the 23-year duration of the marriage, plaintiff's role in raising and educating the two children, her minimal job skills, her having been out of the workforce since 1977 and the parties' respective financial positions (*see Silverman v Silverman,* 304 AD2d 41, 51 [2003]; *Kirschenbaum v Kirschenbaum,* 264 AD2d 344, 345 [1999]). It was also proper to adjust plaintiff's equitable distribution award to give defendant credit for excess temporary maintenance payments (Domestic Relations Law § 236 [B] [5] [d] [5]; *see Galvano v Galvano,* 303 AD2d 206 [2003]). Since plaintiff presented no evidence of the claimed tax implications of awarding defendant a credit against past excess payments, the court's failure to consider them was not error (*see Vicinanzo v Vicinanzo,* 193 AD2d 962, 968 [1993]; *Gluck v Gluck,* 134 AD2d 237, 239 [1987]).

■ We find, however, that plaintiff was improperly denied her distributive share of the nonvested portion of defendant's pension (*Burns v Burns,* 84 NY2d 369, 376 [1994]; *Jones v Jones,*

212 AD2d 1037 [1995]), requiring remand for determination of this asset. Additionally, defendant improperly received a 100% credit of $109,251 for maintenance payments and $6,553 for homeowner's insurance for the marital apartment. Since these payments maintained the value of the marital residence and both parties benefitted from the sale of the residence, defendant should have received a 50% credit for these payments, i.e., $57,902, and we reduce defendant's credit for past temporary maintenance payments by that amount. We also find that given the disparity in the parties' future earning capacity and plaintiff's bleak work prospects, defendant should pay for plaintiff's health insurance until she obtains a job with benefits or is eligible for Medicare.

Finally, the trial court erred in declining to distribute the present value of the parties' interest in KP Holdings, instead directing that this asset be divided on an "if, as and when" basis as the assets it holds are sold.

The asset in question is the parties'* 25% interest in KP Holdings, a New York limited liability company which at the time of this action owned 11 occupied rent-controlled or rent-stabilized apartments in three buildings on the East Side of Manhattan. Defendant offered the testimony of an expert who appraised this asset and concluded that the present value of KP Holdings at the time of the valuation was $340,000. The parties' 25% share was valued at $55,000 after applying a "minority discount" to take into account the lesser market value of a minority interest; without that discount, the parties' interest was valued at $85,000.

The court rejected the validity of this expert's valuation, remarking on various ways that, in its view, the expert had erred. It observed that the expert referred to one of the buildings as a five-story walkup at one point and as a five-story elevator building at another; it further remarked that the expert referred to five of the apartments in one of the buildings as studios when only three are studios. The court added that the expert did not know the startup history or capitalization dates of KP Holdings, nor to whom the management fees and legal

---

* While defendant asserts in a footnote that this asset is not marital property, his testimony that the funds to purchase this asset were obtained from "borrowing against securities that [he] inherited" was not sufficiently supported, and indeed, his net worth statement indicated that it was purchased with marital funds. It was therefore correctly treated as marital property (*see Lischynsky v Lischynsky*, 120 AD2d 824, 826 [1986]).

fees were paid. Finally, the court observed that the expert "acknowledged" that the apartments "could just as easily be worth 6 to 7 million." Based on these observations, the court concluded that the parties' interest in KP Holdings was "wholly speculative," thereby precluding accurate valuation and distribution of its present value, and requiring instead that any future distribution following a sale of a KP-owned apartment be split upon receipt.

Most of the court's criticisms lack validity. Review of the testimony and the appraisal report, including the annexed floor plans, reveals that the expert was fundamentally accurate as to the size and type of the apartments. Moreover, to the extent he did not provide certain information, it was of little if any relevance in arriving at a proper evaluation. As to the expert's reference to "6 to 7 million," what the expert was discussing was not the present value of KP Holdings, but the projected future reversionary value of the properties, that is, the predicted amount the apartments might *eventually* be sold for, projecting as far as 12 to 25 years in the future, to a time when the apartments would be vacated and salable.

The court's conclusion that the parties' interest in KP Holdings was "wholly speculative" seemed to be based primarily on an erroneous belief that the six to seven million dollar figure was a viable alternative valuation amount, making the expert's valuation of KP Holdings at $340,000 seem unreasonably low. However, the properties' total reversionary value should not have been relied upon to cast doubt on the expert's assessment of the *present* value of this investment. The present value of this asset is no more speculative than that of any other asset with limited marketability; it may be properly determined by standard valuation techniques. Rather than rendering the asset's value too speculative to determine, the marketability limitation simply creates the need to apply discounting factors to the future value—exactly the procedure the expert here employed. He properly considered not only the projected sale prices some distance in the future, but then applied discounts to those projected prices to account for such factors as the likely length of time before the apartments will become available for sale, and the expected costs of ownership of the properties in the intervening years.

*Silverman v Silverman* (304 AD2d 41, 49-50 [2003], *supra*), upon which the trial court relied in determining that the value of KP Holdings should be distributed as apartments are sold

and distributions made to the partners, is inapposite. Nothing in *Silverman* stands for the proposition that the equitable way to distribute such an asset is "if, as and when" the apartments are actually sold. *Silverman* concerned *possible future fees* the husband could receive from a hedge fund he had helped set up and manage. *Neither* party in *Silverman* proposed a valuation for these possible future fees; the litigated issue was whether any such payments would constitute a distributable marital asset, rather than future, postjudgment earnings of the husband alone. We affirmed the determination in *Silverman* that any such earnings would constitute distributable marital property, best viewed as dividends or appreciation of the husband's interest in this fund, acquired during the marriage, to be divided evenly when received.

In contrast to an asset consisting of possible future fees, where the asset consists of residential apartments held in the name of a holding company, there is no impediment to determining and distributing a present value.

In one other context it is also sometimes appropriate to defer distribution: pension benefits are, under certain circumstances, appropriately awarded as a specified share of the periodic payments which the employee spouse will receive in the future (*see Bianco v Bianco*, 21 AD3d 918, 918-919 [2005]; *Buzzeo v Buzzeo*, 141 AD2d 490, 491 [1988]). However, an order directing future payment of pension benefits can be provided for in the divorce judgment and qualified domestic relations order, and thereafter administratively handled, without the parties having any further input or impact on the payments, and without any need for further court input. In contrast, here the directive that the KP Holdings proceeds be distributed evenly between the parties as the apartments are sold leaves many possible unresolved issues for dispute between the parties over the years, such as the extent to which defendant may claim reimbursement for capital contributions to maintain the apartments until they are sold. Distribution of assets should not be left unresolved at the time of the divorce where it can be effectuated at that time, as can the parties' interest in KP Holdings.

Notwithstanding the foregoing, we recognize that the trial court had the discretion to reject the valuation offered by defendant's expert if a valid challenge to the expert's method is perceived (*see Matter of Tamara B. v Pete F.*, 185 AD2d 157 [1992], *lv denied* 81 NY2d 703 [1993], *cert denied* 510 US 835 [1993]). One of the court's reasons for rejecting the expert's

conclusion was its observation that the discount rate seemed to have been arbitrarily selected. Indeed, the expert failed to adequately explain why 18% was the appropriate rate. Under such circumstances, the court had the authority to appoint another expert (22 NYCRR 202.18) and direct further proceedings for purposes of a more accurate appraisal.

Therefore, we conclude that the remand of this matter should include further evaluation of the present value of the parties' interest in KP Holdings, and its distribution.

We have considered the parties' remaining arguments for affirmative relief and find them unavailing.

Motion seeking leave to strike reply brief denied.

Accordingly, the judgment of the Supreme Court, New York County (John E.H. Stackhouse, J.), entered November 24, 2004, which, insofar as appealed from, distributed marital property, directed defendant husband to pay plaintiff wife lifetime maintenance of $3,500 per month, and directed defendant to pay for plaintiff's health insurance during the COBRA period, should be modified, on the law and the facts, to (1) award plaintiff 50% of the nonvested portion of defendant's pension valued as of or closely as possible to the date of trial, (2) reduce defendant's credit for excess temporary support payments by $57,902, equaling 50% of the amounts paid for apartment maintenance and homeowner's insurance, (3) direct defendant to pay for plaintiff's health insurance until she obtains a job with health benefits or becomes eligible for Medicare, and (4) distribute the present value of the parties' interest in KP Holdings, and the matter remanded for recomputation of plaintiff's distributive share, and otherwise affirmed, without costs. Appeals from orders, same court and Justice, entered October 31, 2003, February 19, 2004 and August 24, 2004, should be dismissed, without costs, as subsumed in the appeal from the judgment.

ANDRIAS, J. (dissenting in part). We are in agreement with the majority's modification with one exception, namely whether the trial court, relying upon this Court's decision in *Silverman v Silverman* (304 AD2d 41 [2003]), properly distributed the parties' interest in KP Holdings on an "if, as and when" basis given the speculative nature of the investment.

KP Holdings is a limited liability company that owns 11 unsold cooperative or condominium apartments on the East Side occupied by either rent-controlled or rent-stabilized tenants. The trial court rejected defendant's expert's valuation of

defendant's 25% interest in KP Holdings at $55,000 since the expert acknowledged that the apartments could just as easily be worth six to seven million dollars. The court also noted that a vacant apartment had recently sold for $425,000 and defendant realized a $50,000 profit from that sale alone. Thus, citing this Court's decision in *Silverman v Silverman* (*supra*), it held that the only equitable way to distribute the asset would be "if, as and when" the apartments are actually sold.

Relying upon Domestic Relations Law § 236 (B) (4) (b), which requires the court as soon as practicable to set a valuation date somewhere between the date of commencement of the action and the date of trial, defendant argues that if the trial court wanted to reject his expert's valuation, it should have appointed its own valuation expert pursuant to 22 NYCRR 202.18. The majority adopts that position. However, the issue here is not whether the trial court failed to set an appropriate valuation date within the parameters of the statute or whether it properly rejected the valuation of defendant's expert, but whether the asset should be distributed now or at an appropriate time in the future. Domestic Relations Law § 236 (B) (4) (b) merely requires the court to set a valuation date within certain parameters. It does not require that the assets be sold or distributed within any particular time frame.

It is fundamental to the equitable distribution of marital assets and the valuation of such assets that the courts should be as flexible as possible in the particular circumstances of each case. " 'An important aspect of this [equitable distribution] legislation is the flexibility which is incorporated due to the tremendous variation in marital situations and the equities involved. Flexibility, rather than rigidity is essential for the fair disposition of a given case' (1980 NY Legis Ann, at 130)" (*Wegman v Wegman*, 123 AD2d 220, 234-235 [1986]). Thus, despite the general rule regarding the valuation of active and passive assets, " 'a trial court must have the discretion to select a date appropriate to the case before it in light of the particular circumstances presented,' " such as the speculative nature of the value ascribed to the asset (*Smerling v Smerling*, 177 AD2d 429, 430 [1991], quoting *Wegman v Wegman, supra* at 234).

The couple's share in KP Holdings is 25% of KP's only holdings, namely, the apartments. It is the value of those apartments that is speculative and, while I am sure that a real estate professional could, as defendant's expert did, give an educated guess as to their present value, their fully matured value will

only be determined when they are actually sold. In *Silverman,* the issue was not the date of valuation, but whether future income from an investment was properly considered marital property. The rationale, however, is the same. There, this Court (per Saxe, J.) found that the husband's ongoing right to 25% of the partnership fees (an asset similar to defendant's 25% interest in KP Holdings) is better viewed as dividends or appreciation of the husband's interest, acquired and fostered during the marriage (304 AD2d at 50).

The majority's holding, on the basis of its dubious distinction of *Silverman,* defeats the purpose of the Equitable Distribution Law and is neither fair nor equitable to plaintiff, who is forced to accept a presently low value for an asset (her $12\frac{1}{2}\%$ interest in KP Holdings), at which point her ownership interest and income from that investment will cease. Defendant, on the other hand, without further effort on his part, will not only receive a 25% share of any future profits, but also retain the couple's full 25% interest in KP Holdings. If the majority thinks the present value of the parties' interest in KP Holdings should be determined now on the basis of expert testimony, then such value should be set by presently selling the asset and awarding the parties their respective equal shares of the proceeds, a result, I suggest, that would be unacceptable to both parties, but particularly unacceptable to defendant.

Here the parties' share in KP Holdings is a long-term investment purchased, as the majority specifically notes, with marital funds for the purpose of future appreciation. The majority disregards its own reasoning in *Silverman* and, in practical effect, permits defendant to buy out his former wife's 50% share of their joint interest in KP Holdings for a fraction of its true, albeit speculative value. The *Silverman* court, in effect, valued the wife's share of the husband's future income from the asset (25% of profits from an investment hedge fund) at 50%, which share was to be paid to her at some indeterminate time in the future, when the husband received his 25% share of the as yet undetermined profits of the hedge fund, if any. Here, as noted by the majority, defendant also persists in the same argument made by the husband in *Silverman,* namely, that the couple's joint interest in KP Holdings is not marital property but if it is, his wife's entitlement to her equitable share of that marital asset should end with the divorce while his identical share in the identical asset should not.

The majority rejects the first part of the argument, but, in effect, adopts the second part ostensibly because the trial court's

directive, that the proceeds from KP Holdings be distributed evenly between the parties as the apartments are sold, leaves many possible issues for dispute between the parties over the years. Such reasoning is unpersuasive, particularly where it would divest plaintiff of her share of the asset while leaving defendant with unfettered ownership and full entitlement to future income of the parties' joint investment. To force plaintiff to accept a distribution now will have the same effect as choosing an inappropriate valuation date and result in a windfall for defendant incompatible with the objective of equitable distribution (*cf. Finkelstein v Finkelstein*, 268 AD2d 273, 274 [2000], *lv denied* 96 NY2d 703 [2001]).

How should such a result be characterized? Using poetic license and with due respect to a phrase first used in Sir John Harington's collection of "Epigrams" (published posthumously in 1618), later to become the title of a 1960's era anti-Communist political tract, "None dare call it equitable."

BUCKLEY, P.J., and MALONE, J., concur with SAXE, J.; ANDRIAS and NARDELLI, JJ., dissent in part in an opinion by ANDRIAS, J.

Judgment, Supreme Court, New York County, entered November 24, 2004, modified, on the law and the facts, to (1) award plaintiff 50% of the nonvested portion of defendant's pension valued as of or closely as possible to the date of trial, (2) reduce defendant's credit for excess temporary support payments by 50% of the amounts paid for apartment maintenance and homeowner's insurance, (3) direct defendant to pay for plaintiff's health insurance until she obtains a job with health benefits or becomes eligible for Medicare, and (4) distribute the present value of the parties' interest in KP Holdings, and the matter remanded for recomputation of plaintiff's distributive share, and otherwise affirmed, without costs. Appeals from orders, same court, entered October 31, 2003, February 19, 2004 and August 24, 2004, dismissed, without costs, as subsumed in the appeal from the judgment. Motion seeking leave to strike reply brief denied.