[726 NYS2d 668]

Diane P. Alvares-Correa, Respondent, v Jose Alvares-Correa, Appellant.

First Department, July 5, 2001

### APPEARANCES OF COUNSEL

*William C. Herman* of counsel (*Peter Sullivan* on the brief; *Rosenthal & Herman, P. C.*, attorneys), for respondent.

*Myrna Felder* of counsel (*Eleanor B. Alter* on the brief; *Kasowitz, Benson, Torres & Friedman, L. L. P.*, attorneys), for appellant.

### OPINION OF THE COURT

BUCKLEY, J.

Defendant in this matrimonial action claims: that he does

not have control of, nor access to, substantial trust funds; that support awards must be limited to an amount reflecting the precommencement standard of living; that it was error to award lifetime maintenance to plaintiff; that plaintiff should not have been awarded anything for necessaries; and that the award of counsel fees violated the prenuptial agreement between the parties. For the reasons that follow, we reject each of these claims and affirm the trial court.

The parties were married in December 1985 and have two children, born in 1991 and 1993. Prior to the marriage, the plaintiff was an undergraduate at Middlebury College and later at Columbia University, where she received her bachelor's degree in art history. At 21 years of age, she became the income beneficiary of a trust established by her paternal grandfather from which she receives $19,000 per year. She was last employed in the early 1990s and earned between $24,000 and $27,000 per year. Throughout the marriage, plaintiff has been a homemaker and primary caretaker for the children, each of whom has special needs. Defendant was born in Chile, schooled in Switzerland and graduated from Harvard University with an MBA. His premarital employment was with investment banks and, shortly after marriage, his employment income was approximately $75,000 per year. In January 1989, defendant was employed by a Swiss bank, Vontobel, at an annual salary of $100,000, where he remained until July 1991, at which time he founded his own company, ACI Capital Management, Inc., a sole proprietorship which is an investment manager for non-United States clients. In that regard, he earns approximately 1% of the money under his management.

On the morning of the parties' marriage, defendant insisted that plaintiff sign a prenuptial agreement which contained a waiver by plaintiff of equitable distribution and estate rights. During their marital cohabitation, the couple enjoyed a relatively lavish lifestyle, which included residence in a Manhattan apartment with a monthly rental of $5,000 and frequent travels, either together or separately, to Europe, South America and the Caribbean. In addition, they not only had a housekeeper but a full-time nanny to help care for their children.

Beginning with the death of defendant's father in 1986, defendant became depressed and drank heavily. By 1993, defendant was completely withdrawn from plaintiff and the following year he sought medical help and began drug therapy. By

that time, defendant had ceased to provide financial support to his family and plaintiff moved with the children to a recently completed house that had been constructed on property she had purchased with money borrowed from her grandfather's trust. This action was commenced in February 1996 based on allegations that defendant had constructively abandoned plaintiff and had neglected to adequately support her and the children during the prior year.

In an extensive opinion after 20 days of trial, the IAS court dissolved the marriage on the ground of defendant's abandonment, directed defendant to pay support in the amount of $3,500 per month for each child, awarded monthly maintenance of $9,000 to plaintiff continuing until the death of either party or plaintiff's remarriage or February 28, 2005, after which the amount would be reduced to $5,500 per month and continue until plaintiff's remarriage or the death of either party. The court further awarded plaintiff the sum of $101,206 for her necessaries, awarded counsel fees to plaintiff in the total amount of $408,439, and further ordered defendant to be responsible for private school, summer camp, extracurricular activities and insurance for the children. Defendant moved for renewal on the financial aspects of the court's decision, claiming, among other things, that substantial trust funds which were found available to him were, in fact, beyond his control.

■ Defendant's connection to the trust funds happened in the mid-1980s when his grandmother established trusts in the British Virgin Islands. In 1991 those trusts were dissolved and new ones established. Defendant was and remains a vested beneficiary of four trusts and has the sole power of appointment for three of the trusts. The trial court properly rejected defendant's contention that he has no control of, or access to, those offshore trusts. Defendant's property interest in such trust property was not evaluated for purposes of equitable distribution (*see, Riechers v Riechers*, 267 AD2d 445, *lv denied* 95 NY2d 757) but to determine whether he would be able to afford maintenance and child support. The trial court found that defendant had not met his burden of demonstrating that extensive trust assets were not available to him. Such a credibility finding is committed to the discretion of that court (*Galachiuk v Galachiuk*, 262 AD2d 1026, 1027; *Ferraro v Ferraro*, 257 AD2d 596). We have been presented with no reason to disturb that finding.

A party's interest in trusts can be taken into account when making maintenance and child support awards (Domestic Re-

lations Law § 236 [B] [6] [a]; § 240 [1-b] [b] [5] [iv]; *Rothberg v Rothberg,* 174 AD2d 359; *Matter of Chapman v Chapman,* 28 AD2d 1028; *cf.* Restatement [Second] of Trusts § 157 [a]). Defendant is not only a beneficiary of four trusts but has a power of appointment which allows him to direct the distribution of all or any part of trust assets which were valued in 1998 at some $37 million. The trusts were apparently established to avoid or minimize United States income taxes while vesting defendant and his brothers with virtually unrestricted control over such assets. The evidence clearly showed that defendant and his brothers have control and management of the subject trusts, which were established for their benefit, and that defendant not only effectively oversees the trust funds but, pursuant to trust documents, has complete and unfettered access to those funds. There is, therefore, no basis to set aside the fact finding of the trial court and thus to ignore the existence of defendant's offshore assets, which are certainly available to him to as a supplement to his other available assets, and these funds, plus his earning capacity, are sufficient to enable him to satisfy his child support and maintenance obligations.

■ Defendant has further argued that the child support and maintenance awards should have been based on a precommencement standard of living, that lifetime maintenance should not have been awarded, that necessaries should not have been granted and that attorneys' fees were improvidently granted. The precommencement standard of living was relatively lavish, however, and included a five-bedroom apartment in a luxury building near Lincoln Center, employment of a nanny and housekeeper, extensive travel, rental of a weekend home and private school tuition for the children. The award of the trial court permits plaintiff to resume a lifestyle approximating a standard of living enjoyed before commencement. The award of lifetime maintenance, albeit in a reduced amount after five years, was warranted under the circumstances since "[c]onsideration of the predivorce standard of living is an essential component of evaluating and properly determining the duration and amount of the maintenance award to be accorded a spouse" (*Hartog v Hartog,* 85 NY2d 36, 50-51; *see also, Kirschenbaum v Kirschenbaum,* 264 AD2d 344, 345), and "the wife's ability to become self-supporting with respect to *some* standard of living [citation omitted] in no way (1) obviates the need for the court to consider the predivorce standard of living; and (2) certainly does not create a per se bar to lifetime maintenance" (*Hartog v Hartog, supra,* at 52; *see also, Allen v Allen,* 275 AD2d 225, 226).

Throughout the marriage, plaintiff has been the homemaker and primary caretaker for the children and, as such, has delayed employment opportunities. In determining child support and maintenance, the court took into account plaintiff's limited employment history, the special needs of the children, the parties' pre-separation standard of living and the fact that the mother will continue to be the children's primary caretaker. The court correctly determined that, given defendant's vast trust resources, it would be inappropriate to limit child support to the statutory percentage. There simply was no credible support for defendant's conclusory contention that plaintiff has artificially raised the level of her standard of living between commencement and trial.

Where, as here, there is no equitable distribution and a party is not leaving the marriage with any marital property, an award of lifetime maintenance depends upon analysis of the payee spouse's reasonable needs and predivorce standard of living. Plaintiff will be required to rely for her support entirely upon her own assets and whatever earning potential she might possess as a woman in her 40s who is returning to the job market after a long hiatus. The trial court weighed the appropriate statutory factors and correctly recognized that an award of lifetime maintenance was necessary because plaintiff would not otherwise be able to achieve a lifestyle that was at all comparable to the one that she had during the marriage.

■■ Defendant also contends that plaintiff should not have been awarded any money for her necessaries since, in the course of the marriage, each party had paid for his or her own expenses. The necessaries involved included the housing costs of plaintiff and children as well as essential utilities and were properly charged to defendant. Finally, defendant claims that he should not be liable for plaintiff's attorneys' fees since the prenuptial agreement relieved him from liability for "any debts, obligations, liabilities or losses of the other party * * * whether resulting from personal transactions of a private nature or from any business ventures entered into by such other party." The prenuptial does not specify attorneys' fees. Plaintiff's claim for attorneys' fees arises under the Domestic Relations Law and is not a result of a personal transaction or business venture. The court had broad discretion in awarding such fees and there has been no demonstration by defendant of any abuse in the fee award (*DeCabrera v Cabrera-Rosete*, 70 NY2d 879, 881).

Accordingly, the judgment of the Supreme Court, New York County (Jacqueline Silbermann, J.), entered March 29, 2000,

which, to the extent appealed from as limited by the brief, in this matrimonial action, awarded plaintiff lifetime maintenance, and fixed defendant's obligations for child support, counsel fees and necessaries, and order, same court and Justice, entered October 24, 2000, which, upon renewal, adhered to the court's prior determination as set forth in the March 29, 2000 judgment, should be affirmed, without costs.

NARDELLI, J. P., MAZZARELLI, ELLERIN and SAXE, JJ., concur.

Judgment and order, Supreme Court, New York County, entered March 29, 2000 and October 24, 2000, respectively, affirmed, without costs.