■ DAVID C. CYNOSKE, Appellant, v REBECCA O. CYNOSKE, Respondent. [778 NYS2d 105]—

Spain, J. Appeal from a judgment of the Supreme Court (Relihan, Jr., J.), entered January 8, 2003 in Tompkins County, which, inter alia, modified plaintiff's child support obligations.

The parties were married in December 1988 and are the parents of a son born in 1991. They separated in January 2001, agreeing to a shared custodial arrangement whereby the child alternates between his parents' homes on a weekly basis, which has apparently been successful. In March 2001, defendant, the mother, commenced a proceeding in Family Court seeking child support and maintenance. It is undisputed that, during the marriage, the parties' primary source of income was a trust fund created solely from plaintiff's proceeds from a medical malpractice action arising from surgery in 1978 in which his spinal cord was negligently severed causing quadriplegia.

Although the parties' income tax return reflects that their combined income in 2000 was $55,493, a Support Magistrate, in an October 2001 decision and order, calculated defendant's 2000 income as $15,600, plaintiff's 2000 income as $127,172.48, i.e., 100% of the principal and interest which plaintiff drew from the trust in 2000, and found a total combined parental income of $142,772, with 89% attributable to plaintiff. After considering the statutory factors contained in Family Ct Act § 413 (1) (f) (see Domestic Relations Law § 240 [1-b] [f]) and articulating justification for a lower child support obligation, the Support Magistrate capped plaintiff's income at $80,000 and ordered him to pay $1,133.33 in monthly child support and $2,000 in monthly nondurational maintenance, provide the child with medical insurance and pay 89% of the child's uninsured medical and day care expenses. Plaintiff filed written objections to that determination and Family Court, by order dated November 20, 2001, modified the Support Magistrate's order only to the extent of limiting maintenance to five years. The Family Court order was not appealed by either party. In September 2001, before the completion of the foregoing Family Court proceedings, plaintiff commenced this action for divorce in Supreme Court.

In lieu of a trial in Supreme Court, the parties apparently agreed to permit the court to determine all disputed issues in the matrimonial action, including modification of child support and maintenance, based on a document dated October 4, 2002 entitled "Joint Proposed Findings of Fact" (hereinafter the stipulation), which included facts upon which the parties agreed and disagreed. Appended to the stipulation were, among other things, Family Court's decision and order, the Support Magistrate's findings of fact, decision and order, a transcript of the hearing before the Support Magistrate, updated statements of

net worth (*see* Domestic Relations Law § 236) and a number of other documents related to the parties' finances, including information regarding plaintiff's diminishing trust.

By decision dated October 17, 2002, Supreme Court, among other things, granted the parties a divorce, terminated plaintiff's maintenance payments and annulled all maintenance arrears which had accrued. Finding that defendant earned upwards of $17,000 in 2001 but without making any determination as to the amount of plaintiff's income or expressly finding a change in circumstances, the court ordered that, effective November 2002, plaintiff's monthly child support would be reduced to $750 stating, "This amount will produce a 'self-support reserve' level of monthly payments to assist defendant in her care and custody of the parties' son." The court also directed plaintiff to establish a trust account for the benefit of the child in the amount of $90,000 from which plaintiff shall draw his child support payments, to maintain health insurance coverage on the child, to share equally the cost of uncovered medical treatment, and to pay $2,000 of defendant's counsel fees. Only plaintiff has appealed from the ensuing judgment, challenging the modified child support obligation and the award of counsel fees.

Initially, we reject plaintiff's contention that he is not obligated to pay child support because he shares equal custody of the child with defendant. It is well settled that "[s]hared custody arrangements do not alter the scope and methodology of the [Child Support Standards Act]" (*Bast v Rossoff*, 91 NY2d 723, 732 [1998]; *see Baraby v Baraby*, 250 AD2d 201, 203 [1998]). Here, while it is undisputed that the parties' custodial arrangement splits physical custody of the child equally, the record clearly indicates that plaintiff—with access to the principal of a $300,000 trust and having regularly drawn from that principal—is the noncustodial parent for the purposes of support. Under the circumstances of this case, Supreme Court properly determined that plaintiff was obligated to pay child support.

We find merit, however, in plaintiff's assertion that Supreme Court's calculation of his child support obligation was in error, but for reasons other than those argued by plaintiff. Either party may seek to modify an existing order of child support or maintenance upon a showing of a substantial change in circumstance (*see* Domestic Relations Law § 236 [B] [9]). "It is the burden of the moving party to establish the change in circumstance warranting the modification" (*Rosen v Rosen*, 193 AD2d 661, 662 [1993] [citations omitted]). Whether a substantial change has actually occurred should be determined by comparing plaintiff's financial circumstances at the time of the previ-

ous order with his financial circumstances at the time of his application for modification (*see id.* at 662). Although Supreme Court made no specific determination with respect to a change in circumstances, it modified Family Court's support order citing its concern about "the rapid erosion" of plaintiff's trust fund and the likelihood that the existing support orders were pushing plaintiff "even faster into poverty."[1] On our review of the record before us, we conclude, and defendant has not challenged, that plaintiff met his burden of establishing the requisite change in circumstances.

It is clear, however, that Supreme Court erred in calculating plaintiff's new child support obligation without any determination of his income or explanation of why it did not utilize the formula required by the Child Support Standards Act (*see* Domestic Relations Law § 240 [1-b] [c]). "The [Child Support Standards Act] formula must be applied in all but two situations. The first occurs 'where the court determines that the noncustodial parent's *pro rata* share of the basic child support obligation is "unjust or inappropriate" based on consideration of the ten factors set forth in [Domestic Relations Law § 240 (1-b) (f)]'. . . . The second situation arises where the computation of the basic child support obligation reduces the noncustodial parent's income below the applicable poverty level or self-support reserve" (*Matter of Cary [Mahady] v Megerell*, 219 AD2d 334, 336 [1996], *lv dismissed* 88 NY2d 1065 [1996] [citations omitted]). Here, there is no articulation of why the basic child support formula was not followed (*see* Domestic Relations Law § 240 [1-b] [f]) nor is there any explanation of how the court arrived at the $750 per month "self-support reserve" figure.[2]

With few exceptions, the income of the parties, if any, is significant to a court's calculation of child support (*see* Domestic Relations Law § 240 [1-b] [k]). Income can come in many forms and, if necessary, may be imputed by the court (Domestic Relations Law § 240 [1-b] [b] [5]). A party's interest in a trust may be considered by the court in making child support determinations (*see* Domestic Relations Law § 240 [1-b] [b] [5] [iv]; [e];

---

1. It appears that at the time the trust was funded—in the late 1980s—the principal was in excess of one million dollars. Initially, the parties were able to live more than comfortably off the income without depleting a major portion of the principal. During the years leading up to the parties' separation, however, the principal was rapidly depleted due to the parties' lavish lifestyle and poor stock market conditions to the point that the principal was reduced to $498,604 by August 2001 and to approximately $300,000 by October 2002.

2. Notably, the self-support reserve for 2001—using 2001 federal guidelines—is $11,596.50 or $966.38 per month (*see Bemis v Bemis*, 305 AD2d 739, 740 [2003]).

*Alvares-Correa v Alvares-Correa*, 285 AD2d 123, 126-127 [2001], *lv denied* 97 NY2d 608 [2002]).[3] Here, Supreme Court never arrived at an income attributable to plaintiff in determining his child support obligation, a prerequisite even when invoking the "self-support reserve" provision of Domestic Relations Law § 240 (1-b) (d). Accordingly, this matter should be remitted to Supreme Court for a de novo determination of plaintiff's child support obligation pursuant to all applicable provisions of Domestic Relations Law § 240 (1-b) and, if necessary, a full hearing shall be held as soon as possible.

We also note that if, on remittal, Supreme Court concludes that plaintiff's pro rata share of the parties' basic child support obligation calculated pursuant to Domestic Relations Law § 240 (1-b) (f) is "unjust or inappropriate" (Domestic Relations Law § 240 [1-b] [f]), plaintiff cannot be ordered to pay any part of the child's future reasonable medical expenses not covered by insurance (*see Gentner v Gentner*, 289 AD2d 886, 889 [2001]; *Callen v Callen*, 287 AD2d 818, 819 [2001]; *Matter of Cary [Mahady] v Megerell, supra* at 337). Finally, it was error for Supreme Court to award counsel fees to defendant as defendant concedes that she made no request for counsel fees and failed to submit any supporting documentation of the services provided (*see Poli v Poli*, 286 AD2d 720, 723-724 [2001]; *Gordon v Gordon*, 202 AD2d 634, 635 [1994]).

We have considered plaintiff's remaining contentions and find that they are either unpreserved for appellate review or without merit. In the interim, we will temporarily continue the existing judgment so as to preserve the status quo, pending Supreme Court's immediate reconsideration of plaintiff's child support obligation.

Crew III, J.P., Peters, Mugglin and Lahtinen, JJ., concur. Ordered that the judgment is modified, without costs, by reversing so much thereof as modified plaintiff's child support obligation and awarded defendant counsel fees; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision, and pending further order of the Supreme Court, the judgment appealed from shall remain in effect as a temporary judgment; and, as so modified, affirmed.

---

**3.** Thus, we disagree with plaintiff that his income should be calculated solely on his trust income. We also disagree, however, with defendant that 100% of plaintiff's draw from the trust is necessarily income within the meaning of Domestic Relations Law § 240 (1-b) (b) (5), as consideration should be given to, among other things, the rapid decline and the nonrecurring nature of the principal.