■ CAROL CARPENTER-SIRACUSA, Respondent, v JACK SIRACUSA, Appellant. [824 NYS2d 662]—In a matrimonial action in which the parties were divorced by a judgment entered June 23, 1999, the defendant appeals, as limited by his brief, from so much of an order of the Supreme Court, Suffolk County (Doyle, J.), dated February 24, 2005, as, after a hearing, sua sponte, increased his child support obligation from the sum of $125 per week to the sum of $257 per week.

Ordered that on the Court's own motion, the notice of appeal is treated as an application for leave to appeal, and leave to appeal is granted (*see* CPLR 5701 [c]); and it is further,

Ordered that the order is affirmed insofar as appealed from, with costs.

The father, who stipulated that the court would determine "[t]he amount of child support, if any, to be paid by either party to the other," waived any argument that the court had no basis for modifying his child support obligation (*cf. Gleicher v Gleicher*, 303 AD2d 549 [2003]). Furthermore, under the circumstances, the court, in modifying that obligation, properly considered the mother to be the custodial parent for child support purposes (*see Bast v Rossoff*, 91 NY2d 723, 726 [1998]; *Cynoske v Cynoske*, 8 AD3d 720, 722 [2004]; *Matter of Carlino v Carlino*, 277 AD2d 897, 898 [2000]; *Baraby v Baraby*, 250 AD2d 201, 204 [1998]), and properly imputed an annual income of $85,000 to the father (*see Scammacca v Scammacca*, 15 AD3d 382 [2005]; *Parise v Parise*, 13 AD3d 504, 505 [2004]).

The father's remaining contentions are without merit. Schmidt, J.P., Adams and Santucci, JJ., concur.

Skelos, J. (dissenting and voting to grant leave to appeal and reverse the order insofar as appealed from): The mother commenced the instant matrimonial action in 1998 seeking a divorce and ancillary relief. On March 12, 1999 the parties entered into a stipulation of settlement on the record in open court (hereinafter the stipulation of settlement). Pursuant to the stipulation of settlement, the parties, inter alia, agreed to joint legal and physical custody of their infant daughter (hereinafter the child), with each parent having equal time with the child by alternating weeks. The father agreed to pay child support pursuant to the Child Support Standards Act (hereinafter the CSSA) in the sum of $125 per week (*see* Domestic Relations Law § 240 [1-b]). The parties were divorced by judgment entered June 23, 1999 and the stipulation of settlement was incorporated but not merged into the judgment of divorce.

After the parties' divorce, the parties made a series of applications and entered into several stipulations. Just two months after the judgment of divorce was entered, the mother moved, inter alia, to hold the father in contempt for his alleged failure to pay child support. By notice of cross motion dated August 26, 1999 the father cross-moved, inter alia, for sole custody of the child and an award of child support from the mother. The father's cross motion was followed by the mother's separate motion, inter alia, to terminate the father's parental rights. By order dated December 14, 1999 the Supreme Court, inter alia,

denied that branch of the mother's first motion which was to hold the father in contempt for his alleged failure to pay child support and "referred for determination to a hearing" certain branches of the father's cross motion. The only branch of the motions or cross motion dealing with child support that was referred for a hearing was that branch of the father's cross motion which was for an award of child support from the mother. Likewise, the genesis of this appeal was the ultimate disposition some 4¹/₂ years later, after a hearing, of that branch of the father's cross motion seeking child support.

Following the issuance of the order dated December 14, 1999 the court appointed a law guardian and forensic expert, and the parties resolved certain issues attendant to the motions and cross motion by stipulation. The parties also entered into a stipulation pursuant to which they consented to the appointment of a judicial hearing officer (hereinafter the JHO) to "hear and determine" certain issues which remained pending and undecided (hereinafter the consent stipulation). By stipulation notarized December 8, 2000 (hereinafter the December 8, 2000 stipulation), the parties modified the stipulation of settlement and superseded any prior court orders only to the extent that they pertained to "custody, visitation and other parenting issues." Significantly, the December 8, 2000 stipulation did not modify the father's child support obligation. However, it was in the consent stipulation that the parties defined the "nature of the issue or issues to be resolved by the [JHO]" as including "[t]he amount of child support, if any, to be paid by either party to the other."

A hearing was not held until late 2003. By order dated February 24, 2005 the Supreme Court, inter alia, after the hearing, increased the father's child support obligation from the sum of $125 per week to the sum of $257 per week. The majority, in affirming the order appealed from, relied upon the consent stipulation in concluding that the father "waived any argument that the court had no basis for modifying his child support obligation" (*infra*). I do not agree with the majority that the father waived any such argument (*cf. Gleicher v Gleicher*, 303 AD2d 549 [2003]).

The intent of the parties in entering into the consent stipulation must be determined by an examination of the entire record (*see McWade v McWade*, 253 AD2d 798 [1998]). Here, the majority, in interpreting the stipulation as a consent to a de novo support determination, ignores the extensive motion practice engaged in by the parties in advance of the stipulation. The order dated December 14, 1999 limited the specific issues referred

for a hearing to specific branches of the parties' prior applications that remained pending and undecided. As is relevant to this appeal, the only unresolved issue at bar pertaining to child support was that branch of the father's cross motion which was for an award of child support from the mother. Indeed, the Supreme Court, in the order appealed from, enumerated as one of "the remaining issues before this court for consideration" the aforementioned branch of the father's cross motion. While the court indicated that the remaining issues referred to it were "[b]ased on" the consent stipulation (which contained the broader language), it also limited those issues to those "[b]ased on . . . the 'open' post judgment applications." Here, there was no open and undecided application by the mother for an increase in her award of child support from the father. Indeed, prior to the hearing, the mother made no such application.

Accordingly, in my opinion, the court, in effect, exceeded the parameters of the father's consent given that the only issue pertaining to child support that remained pending and undecided to which the father reasonably could have given his consent to refer to the court was his own application for child support. Instead, the court erred in awarding the mother an increase in child support in the absence of any application by her to do so.

Moreover, the court erred in its determination that an increase in the father's child support obligation was warranted. A stipulation of settlement that is incorporated into but not merged with a divorce decree is an independent contract binding on the parties unless impeached or challenged for some cause recognized by law (*see Kleila v Kleila*, 50 NY2d 277, 283 [1980]; *Christian v Christian*, 42 NY2d 63 [1977]; *Leffler v Leffler*, 40 NY2d 1036 [1976], *affg* 50 AD2d 93 [1975]; *Goldman v Goldman*, 282 NY 296, 300 [1940]; *Galusha v Galusha*, 116 NY 635 [1889]; *Steers v Steers*, 69 AD2d 858 [1979]). Indeed, "courts of this State enjoy only limited authority to disturb the terms of a separation agreement" (*Kleila v Kleila, supra* at 283).

A court may modify such an agreement regarding child support, in the first instance, if it was unfair or inequitable when it was entered into (*see Matter of Gravlin v Ruppert*, 98 NY2d 1, 5-6 [2002]; *Merl v Merl*, 67 NY2d 359, 362 [1986]). Such is not the case at bar. The mother did not allege that the parties' agreement regarding child support, which was presumptively appropriate because it was made pursuant to the CSSA (*see Matter of Schaller v Schaller*, 279 AD2d 525, 526 [2001]), was unfair or inequitable when it was entered into. Further, it is important to reiterate that there was no application by the

mother before the Supreme Court to increase the father's child support obligation in which such allegation might have been made.

A court also may modify a child support order when there is an unanticipated and unreasonable change in circumstances that has resulted in a concomitant need to change the parties' agreement (*see Merl v Merl, supra* at 362; *Matter of Boden v Boden*, 42 NY2d 210, 213 [1977]). In addition, a party seeking an increase in the child support obligation of the noncustodial parent has the burden of establishing that there has been a substantial change in circumstances warranting such an increase (*see* Domestic Relations Law § 236 [B] [9] [b]). The party seeking an increase "must establish the 'specific increases in the costs related to the child's basic necessities of food, shelter, clothing and medical and dental needs, as well as to the expenses associated with the child's varied interests and school activities' and cannot '[rely] on generalized claims of increases due to the child's maturity or inflation' " (*Matter of Cadwell v Cadwell*, 294 AD2d 434, 434-435 [2002], quoting *Matter of Miller v Davis*, 176 AD2d 945, 945-946 [1991]; *see Matter of Brescia v Fitts*, 56 NY2d 132, 140-141 [1982]). This would require a showing of "specific increases in the costs related to the child's basic necessities" (*Matter of Cadwell v Cadwell, supra* at 435).

Here, while there was some evidence presented at the hearing that since the parties entered into the stipulation of settlement, the mother changed jobs and at various times remained unemployed resulting in a decrease in her income, there was no evidence of an "unanticipated and unreasonable change of circumstances" (*Merl v Merl, supra* at 362; *Matter of Boden v Boden, supra*) nor was there a showing of "specific increases in the costs related to the child's basic necessities" (*Matter of Cadwell v Cadwell, supra* at 435).

On appeal, the mother argues that the December 8, 2000 stipulation itself, in effect, constituted a substantial change of circumstances so as to satisfy the requirements of Domestic Relations Law § 236 (B) (9) (b). There is absolutely no merit to this argument as the substantial change of circumstances to which Domestic Relations Law § 236 (B) (9) (b) refers relate to the child's basic necessities of food, shelter, clothing, and medical and dental needs, in addition to expenses associated with the child's interests and activities (*see Matter of Cadwell v Cadwell, supra*; *Matter of Miller v Davis*, 176 AD2d 945, 945-946 [1991]; *see also Matter of Brescia v Fitts, supra*). Here, the December 8, 2000 stipulation modified the parties' previous custodial access schedule only to the extent of specifying the schedule for certain

holidays and events. However, it did not change the joint custody arrangement. Thus, that agreement did not constitute a "substantial change in circumstances" as is contemplated by Domestic Relations Law § 236 (B) (9) (b). Moreover, there was minimal testimony at the hearing regarding the child's needs and absolutely no evidence proffered that her needs were not being met (*see Matter of Boden v Boden, supra*). Consequently, in my view, there was no basis on this record, either procedurally or substantively, to increase the father's child support obligation. Therefore, I respectfully dissent.