■ MARIANNE QUINN, Appellant-Respondent, v DAVID E. QUINN, Respondent-Appellant. [876 NYS2d 720]—

Peters, J. (1) Cross appeals (a) from an order of the Supreme Court (Lynch, J.), entered February 6, 2008 in Albany County, which, among other things, awarded plaintiff 30% of the value of defendant's medical business, and (b) from a judgment of said court, entered June 20, 2008, ordering, among other things, equitable distribution of the parties' marital property, upon a decision of the court, and (2) appeal from an order of said court, entered July 17, 2008 in Albany County, which granted plaintiff's application for counsel and expert fees.

The parties were married in 1991 and have two children (born in 1993 and 1996). In December 2005, plaintiff commenced this divorce action. Prior to trial, the parties agreed that defendant would not oppose plaintiff's grounds for divorce and executed stipulations resolving the issues of custody and valuation of the marital assets. They also executed a discovery and fee stipulation which, in relevant part, permitted plaintiff to use a specific account for certain counsel and expert fees and empowered Supreme Court to determine whether the used portion of the funds would be credited against plaintiff's equitable distribution award or charged to defendant.

Following a bench trial, Supreme Court issued a decision and order which, among other things, awarded maintenance to plaintiff in the amount of $10,000 per month for 12 years, set defendant's monthly child support obligation at $8,058, and distributed the marital assets. Overall, the parties' marital assets were distributed equally, with the exception of defendant's medical business, of which plaintiff was awarded 30% of the stipulated value. This decision and order was incorporated, along with the parties' prior stipulations, into a judgment of

divorce. Supreme Court subsequently granted plaintiff's application for counsel and expert fees in an amount that exceeded the funds set aside for this purpose pursuant to the discovery and fee stipulation. The parties now cross-appeal from Supreme Court's judgment of divorce,[1] and defendant appeals from the order awarding plaintiff counsel and expert fees.

We first address plaintiff's contention that Supreme Court erred in failing to equally distribute defendant's medical business. Supreme Court is vested with " 'substantial discretion in determining what distribution of marital property will be equitable under all the circumstances' " (*Farrell v Cleary-Farrell*, 306 AD2d 597, 599 [2003], quoting *Owens v Owens*, 288 AD2d 782, 783 [2001]), and "there is no requirement that the distribution of each item of marital property be on an equal or 50-50 basis" (*Arvantides v Arvantides*, 64 NY2d 1033, 1034 [1985]; *see Corbett v Corbett*, 6 AD3d 766, 767 [2004]).

Here, Supreme Court examined and set forth the circumstances of the parties and the pertinent statutory factors it considered in deciding to distribute to plaintiff 30% of the value of defendant's interest in the medical business (*see* Domestic Relations Law § 236 [B] [5] [d]; *Holterman v Holterman*, 3 NY3d 1, 8-9 [2004]). In reaching its conclusion, the court fully considered the parties' 14-year marriage, the fact that plaintiff agreed to forgo a career in retail when the parties decided to get married and relocate, and her domestic and child-rearing contributions to the marriage that allowed defendant to build his practice. The court also recognized, however, that, prior to the marriage, defendant not only obtained his medical degree and license, but he was also an established orthopedic surgeon. Further, although plaintiff indirectly contributed to the medical business as a parent and homemaker, she made no direct contributions, financial or otherwise, to defendant's business (*see Chalif v Chalif*, 298 AD2d 348, 349 [2002]; *compare Redgrave v Redgrave*, 13 AD3d 1015, 1017-1018 [2004]; *Newton v Newton*, 246 AD2d 765, 765-766 [1998], *lv denied* 91 NY2d 813 [1998]). Given these circumstances, as well as the substantial award of maintenance that plaintiff will receive (*see* Domestic Relations Law § 236 [B] [5] [d] [6]), we cannot conclude that Supreme Court abused its discretion in awarding plaintiff 30%

---

1. Although the parties also cross-appeal from Supreme Court's February 6, 2008 decision and order, entry of the judgment of divorce requires our dismissal of the cross appeals from that intermediate order (*see Matter of Aho*, 39 NY2d 241, 248 [1976]; *Smith v Smith*, 8 AD3d 728, 729 n [2004]). Nevertheless, the issues raised on the cross appeals from that order are brought up for review on the cross appeals from the judgment of divorce (*see* CPLR 5501 [a] [1]; *Finn v Finn*, 277 AD2d 834, 835 n 2 [2000]).

of the value of defendant's interest in the medical business (*see Arvantides v Arvantides*, 64 NY2d at 1034; *Hammack v Hammack*, 20 AD3d 700, 705 [2005], *lv dismissed* 6 NY3d 807 [2006]; *Chalif v Chalif*, 298 AD2d at 349).

Next, plaintiff challenges Supreme Court's decision to charge against her equitable distribution award $70,262 in assets withdrawn from a joint First Niagara Bank account. At trial, plaintiff testified that, shortly after defendant's departure from the marital residence, she withdrew such funds from the joint account and deposited them into an account opened solely in her name. Although she further claimed that the funds were used for "bills," she did not specify what expenses were paid or document that such marital funds were in fact used for this purpose. Moreover, defendant introduced into evidence documentation showing that, at the time this action was commenced, the balance of the personal account opened by plaintiff was $70,262. Having failed to offer any proof that the $70,262 had been utilized for marital expenses, Supreme Court properly charged such amount against plaintiff's distributive award.

We do, however, agree that Supreme Court's determination concerning dependency exemptions for income tax purposes must be modified. In permitting defendant, the noncustodial parent, to declare the tax exemptions, Supreme Court reasoned that defendant is the sole source of income for the children and that allowing him to take the full benefit of the tax exemptions would "maximize the total available income to implement [the court's] decision." Although we do not quarrel with Supreme Court's reasoning, and recognize that "[w]here a noncustodial parent meets all or a substantial part of a child's financial needs, a court may determine that the noncustodial parent is entitled to declare the child as a dependent" (*Pachomski v Pachomski*, 32 AD3d 1005, 1007 [2006]; *see Guarnier v Guarnier*, 155 AD2d 744, 746 [1989]), here defendant will be unable to take advantage of the benefits of the tax exemptions because his income exceeds the threshold set forth in 26 USC § 151 (d) (3). While defendant correctly replies that such provision contains a sunset clause causing it to expire in 2010 (*see* 26 USC § 151 [d] [3] [F]), we find no reason to deprive the parties of the opportunity to realize *any* tax benefit for the 2008 and 2009 taxable years. Accordingly, under the circumstances of this case, plaintiff may claim the parties' children as dependants for income tax purposes for the 2008 and 2009 tax years, and for such further time until defendant will no longer be precluded from the benefit of such dependency tax exemption.

Turning to defendant's cross appeal, he first argues that

Supreme Court's award of maintenance was excessive in duration and amount. "Maintenance is designed to provide temporary support while one spouse gains skills, education or experience necessary to become self-sufficient" (*Burtchaell v Burtchaell*, 42 AD3d 783, 785 [2007] [citation omitted]). In determining the amount and duration of maintenance, the court must consider the enumerated factors set forth in Domestic Relations Law § 236 (B) (6) (a), as well as the predivorce standard of living of the recipient spouse (*see Hartog v Hartog*, 85 NY2d 36, 50-51 [1995]; *Bean v Bean*, 53 AD3d 718, 723 [2008]).

The parties were married for 14 years and, at the time of trial, defendant was 50 years old and earning over $1.1 million per year as a partner in a lucrative orthopedic practice. Plaintiff was 52 years old at the time of trial and, while gainfully employed prior to the marriage, sacrificed a career in retail management in order to undertake the role of a full-time wife and mother. Her prolonged absence from the retail market and lack of a college degree make it highly unlikely that she will ever be able to achieve reasonable parity with the marital standard of living through her own employment. Further, the parties' lifestyle prior to their divorce was lavish, in that, among other things, they resided in a 5,000-square-foot home, owned a vacation home on Lake George valued at nearly $1.5 million, possessed expensive automobiles, enjoyed country club memberships and traveled extensively. Moreover, plaintiff will now be responsible for her own health insurance, property taxes, homeowner's insurance, and automobile expenses. In light of these facts, the monthly maintenance award of $10,000 was a reasonable exercise of Supreme Court's discretion (*see Bean v Bean*, 53 AD3d at 723; *Hendricks v Hendricks*, 13 AD3d 928, 929 [2004]).

However, inasmuch as " 'this Court's authority is as broad as Supreme Court's in resolving questions of maintenance' " (*Redgrave v Redgrave*, 13 AD3d at 1019, quoting *Smith v Smith*, 249 AD2d 813, 814 [1998]), we find that the duration of the maintenance award should be reduced to eight years. This " 'will better serve the primary goal of maintenance, which is to encourage rehabilitation and self-sufficiency to the extent possible, while still accounting for a large discrepancy in earning power between the parties' " (*Bean v Bean*, 53 AD3d at 724, quoting *Semans v Semans*, 199 AD2d 790, 792 [1993], *lv denied* 83 NY2d 758 [1994]). Additionally, mindful that the primary purpose of maintenance is to encourage self-sufficiency by the recipient (*see Schwalb v Schwalb*, 50 AD3d 1206, 1210 [2008]; *Semans v Semans*, 199 AD2d at 792), we find that the 4% annual increase in the amount of maintenance was inappropriate.

Next, we are unpersuaded by defendant's argument that Supreme Court abused its discretion in setting his child support obligation at $8,058 per month. Here, Supreme Court specifically found, and the parties acknowledged, that strict application of the statutory figure of 25% to all income in excess of $80,000—which would yield a monthly child support obligation of $21,642—would be inappropriate (*see* Domestic Relations Law § 240 [1-b] [b] [3]). The court then properly considered the factors listed in Domestic Relations Law § 240 (1-b) (f), including the financial resources of the parents, the children's lavish predivorce standard of living, as well as the cost of the children's numerous after-school activities, including piano, skiing, tennis and horseback riding, and determined that a reduced percentage of 8% to all remaining income over $80,000 would be appropriate (*see Holterman v Holterman*, 3 NY3d at 13-15; *Matter of Cassano v Cassano*, 85 NY2d 649, 655 [1995]). While defendant correctly notes that a distributive award to be paid by one parent to the other is a factor that the trial court may consider in awarding child support (*see Holterman v Holterman*, 3 NY3d at 14), we cannot conclude that Supreme Court abused its discretion in failing to reduce his child support obligation due to the size of plaintiff's distributive award (*see id.*). Accordingly, Supreme Court properly exercised its discretion in determining child support.

Defendant's challenges to Supreme Court's distribution of the parties' marital assets are similarly unavailing. However, the distribution of one particular asset requires further discussion. In distributing the marital property, the court properly awarded defendant the parties' joint First Niagara Bank account, the value of which was stipulated to be $44,849.07 as of the commencement of the divorce action. However, while Supreme Court ordered that this account shall have a value of not less than this amount upon transfer to defendant, it is not disputed that plaintiff used all such funds during the pendency of this action and that the account was fully depleted upon being transferred to defendant.[2] Because Supreme Court's clear intent was to equally distribute the marital assets, defendant is entitled to the value of the joint First Niagara Bank account as set forth in the court's order and directed by the judgment of divorce.

We also agree with defendant that Supreme Court abused its discretion in awarding plaintiff counsel and expert fees in excess

---

**2.** Plaintiff's contention that Supreme Court intentionally charged defendant with the value of this account in an effort to hold him responsible for plaintiff's pendente lite support is contradicted by the record.

of the amount contained in the stipulated fund. As previously noted, the parties stipulated that plaintiff could use, for certain counsel and expert fees, the $60,730.68 contained in an account comprised of the parties' 2005 joint income tax refund, and that Supreme Court would subsequently determine how any such used portion would be allocated between the parties. The court ultimately awarded plaintiff the full benefit of the $60,730.68, without any credit against her equitable distribution award, as well as an additional $32,500 for expert fees and $25,000 in counsel fees. Given the $472,500 distributive award that plaintiff will be receiving as her share of the value of the medical business, as well as her monthly award of $10,000 in maintenance, we are of the view that plaintiff received sufficient liquid funds to enable her to pay that portion of her counsel and expert fees that exceeded $60,730.68 (*see Florio v Florio*, 25 AD3d 947, 951 [2006]; *Newton v Newton*, 246 AD2d at 768; *Richards v Richards*, 189 AD2d 1025, 1026 [1993]).

Finally, the $2 million life insurance policy that defendant is required to maintain to secure plaintiff's distributive award and his maintenance and child support obligations should be a declining term policy (*see Bean v Bean*, 53 AD3d at 725; *Matter of Anonymous v Anonymous*, 31 AD3d 955, 957 [2006]; *Somerville v Somerville*, 26 AD3d 647, 650 [2006], *lv dismissed and denied* 7 NY3d 859 [2006]).

Cardona, P.J., Malone Jr., Stein and McCarthy, JJ., concur. Ordered that the appeal and cross appeal from the order entered February 6, 2008 are dismissed, without costs. Ordered that the judgment entered June 20, 2008 is modified, on the law and the facts, without costs, by (1) reducing the duration of plaintiff's maintenance award to eight years, (2) striking the provision allowing for a 4% annual increase in maintenance, (3) directing that the life insurance policy to be maintained by defendant be a declining term policy, (4) directing plaintiff to pay defendant $44,849.07, representing the value of the joint First Niagara Bank account as set forth in the February 6, 2008 order, and (5) granting plaintiff the present right to claim the parties' children as exemptions for federal and state income tax purposes, and, as so modified, affirmed. Ordered that the order entered July 17, 2008 is modified, on the facts, without costs, by reversing so much thereof as awarded plaintiff expert fees in the amount of $32,500 and counsel fees in the amount of $25,000, and, as so modified, affirmed.