CAROL NOBLE, Respondent, v STEVE NOBLE, Appellant. [911 NYS2d 252]—

Peters, J.P. Appeal from a judgment of the Supreme Court (Teresi, J.), entered September 17, 2009 in Albany County, ordering, among other things, equitable distribution of the parties' marital property, upon a decision of the court.

The parties were married in 1986 and have two children (born in 1988 and 1991). In July 2008, plaintiff commenced this action for divorce. The parties stipulated to the grounds for divorce and the value of certain items of marital property, but proceeded to a nonjury trial on the issues of equitable distribution, maintenance, child support and counsel fees. Supreme Court, in adopting specific proposed findings of fact and conclusions of law submitted by the parties, ordered an equal division of the marital equity in the marital residence and the value of the real estate owned by defendant's businesses, distributed the

debt associated with those businesses to defendant and classified the remaining assets as separate property. The court also directed defendant to pay both child support and nondurational maintenance and granted plaintiff's application for counsel fees. Defendant now appeals.

Initially, "it is well established that the trial court must hear sufficient evidence in order to intelligently make the necessary findings and must state the reasons therefore in accordance with Domestic Relations Law § 236 (B)" (*Bean v Bean*, 53 AD3d 718, 721 [2008]). Here, following five days of testimony from various witnesses and the receipt of numerous documents into evidence, the parties submitted nearly 100 pages of proposed findings of fact and conclusions of law, each of which cited to the record for support and was marked "found" or "not found" by Supreme Court. In rendering its decision, the court did not abdicate its responsibilities by adopting the parties' findings and conclusions wholesale, but rather edited them by deleting, adding or modifying language and inserting additional reasoning and awards (*compare Altieri v Altieri*, 35 AD3d 1093, 1096 [2006], *with Capasso v Capasso*, 119 AD2d 268, 275-276 [1986]). Although the statutory factors are not specifically cited to, the court's factual findings reveal that it did consider the relevant factors and adequately set forth the reasons for its decision (*see Bean v Bean*, 53 AD3d at 721-722; *Rosenkranse v Rosenkranse*, 290 AD2d 685, 686 [2002]; *Moschetti v Moschetti*, 277 AD2d 838, 838-839 [2000]; *Fraley v Fraley*, 235 AD2d 997, 997-998 [1997]). Under these circumstances, we find that Supreme Court's decision sufficiently complies with the requirements of Domestic Relations Law § 236 (B).

Relatedly, while Supreme Court did not violate the statute in this case, the practice of editing and then adopting proposed findings of fact and conclusions of law is not recommended. Particularly when utilized in the context of an equitable distribution determination, the practice has the potential to create confusion and inconsistencies within the overall decision—as it did here with respect to the distribution of plaintiff's personal account with RBC Wealth Management. Specifically, the court's conclusions of law state that plaintiff's RBC account is separate property associated with "significant debt[ ]" and not subject to equitable distribution while, at the same time, also state that the RBC account is subject to 50% distribution. Inasmuch as it is unclear as to how the court intended to distribute that asset, we remit for clarification (*see Smith v Smith*, 1 AD3d 870, 871 [2003]).

Next, Supreme Court's finding that defendant wastefully dis-

sipated marital assets, a factor which it was entitled to consider in equitably distributing the marital property (see Domestic Relations Law § 236 [B] [5] [d] [12]), is amply supported by evidence that defendant engaged in excessive spending, made various unsecured loans without plaintiff's knowledge and invested in two businesses that resulted in no economic benefit to the parties. Defendant had been employed with NBT Bank earning an annual income in excess of $80,000, but he resigned in 2007 after being faced with dismissal for simultaneously operating businesses that acted in direct competition with his employer. Defendant then liquidated his 401 (k) account, invested the approximately $110,000 into his two businesses and borrowed over $700,000 to cover start-up and other business costs. While obligated on these debts and with the businesses operating at a loss, he made unsecured loans to friends and business associates in amounts totaling over $165,000, none of which has been repaid. Moreover, at a time when it was clear that his businesses were suffering and notwithstanding his court-imposed restrictions on spending, defendant spent an inordinate amount of money. He engaged in extensive travel—funded by proceeds he received through an insurance settlement involving one of his companies—in the months preceding the trial, spent nearly $10,000 in country club dues in 2009 and thousands of dollars on restaurants, additional golf expenses, hotels, furnishings for his apartment and Internet Web sites, all while failing to pay the mortgage on the marital home, court-ordered child support and maintenance and notwithstanding his court-imposed restriction on spending. Thus, according deference to Supreme Court's credibility determinations and assessment of the evidence (see Carlson-Subik v Subik, 257 AD2d 859, 862 [1999]), we cannot say that the finding of wasteful dissipation was improper or that the court abused its considerable discretion in apportioning all debt associated with defendant's businesses to defendant and declining to credit him with an equitable share of the marital home furnishings as a consequence (see Altieri v Altieri, 35 AD3d at 1095; Brzuszkiewicz v Brzuszkiewicz, 28 AD3d 860, 861 [2006]; Baker v Baker, 199 AD2d 967, 968 [1993]).

Nor are we persuaded that Supreme Court erred in refusing to impute as income to plaintiff the monthly sums of money that she received from her mother during the two years preceding the trial. These funds were given to plaintiff to assist with her day-to-day needs and payment of bills during the time when defendant left his employment at NBT and, subsequently, the marital home, as well as during the pendency of this action when defendant failed to provide support for plaintiff and the

children (*see Isaacs v Isaacs*, 246 AD2d 428, 428 [1998]). Moreover, plaintiff testified that there is no agreement that her mother continue to give her such sums of money (*see Huebscher v Huebscher*, 206 AD2d 295, 296 [1994]). Considering the timing and discretionary nature of the gift-giving, the decision not to impute these funds as income was not an abuse of discretion.

Similarly unavailing is defendant's assertion that Supreme Court improperly gave plaintiff a separate property credit for funds used to make the down payment on the marital home. The trial evidence established that plaintiff was given $200,000 from her mother, in the form of two $100,000 checks made out to her only, as a gift for use as a down payment on the marital home. Plaintiff then deposited these funds into the parties' joint account and they were subsequently used for that purpose. Defendant does not dispute that the money was a gift to plaintiff that constituted her separate property when given (*see* Domestic Relations Law § 236 [B] [1] [d] [1]), but claims that the funds were converted to marital property when they were deposited into the parties' joint checking account. Although the transfer of separate property into a joint account raises a presumption that the funds are marital property, "this presumption may be rebutted by proof that such deposits were made 'as a matter of convenience, without the intention of creating a beneficial interest' " (*Fehring v Fehring*, 58 AD3d 1061, 1062 [2009], quoting *Chamberlain v Chamberlain*, 24 AD3d 589, 593 [2005]; *see Dugue v Dugue*, 172 AD2d 974, 976 [1991]). To that end, plaintiff testified that she did not have a traditional individual checking account, and Supreme Court credited her testimony that she deposited the moneys into the joint checking account because this was the only account she readily had access to for this purpose. Furthermore, the funds were transferred into the joint account for a mere six weeks in anticipation of the closing on their home. Giving deference to Supreme Court's credibility determinations (*see Gulbin v Moss-Gulbin*, 45 AD3d 1230, 1232 [2007], *lv denied* 10 NY3d 705 [2008]), we find no basis to disturb its conclusion that plaintiff overcame the presumption that she intended to commingle her funds by depositing them in the parties' joint account (*see Brugge v Brugge*, 245 AD2d 1113, 1114 [1997]; *McGarrity v McGarrity*, 211 AD2d 669, 671 [1995]). Accordingly, plaintiff was entitled to this credit reflecting the investment of her separate funds into the marital residence (*see Pulver v Pulver*, 40 AD3d 1315, 1320 [2007]; *Gonzalez v Gonzalez*, 291 AD2d 373, 374 [2002]; *Mink v Mink*, 163 AD2d 748, 749 [1990]).

Defendant's contention that Supreme Court engaged in

improper "double counting" (*Grunfeld v Grunfeld*, 94 NY2d 696, 700 [2000]) is also without merit. The court did not equitably distribute his businesses and then improperly include future business profits and earnings in determining his income for purposes of awarding maintenance. The record makes clear that Supreme Court equitably distributed only the stipulated value of the *real estate* owned by defendant's businesses, not any future profits and earnings associated with the businesses themselves. Nor did any such future earnings and profits factor into Supreme Court's calculation of maintenance; rather, the court exercised its discretion to impute income to defendant in the amount of his former salary at NBT (*see generally Matter of Knights v Knights*, 71 NY2d 865, 866-867 [1988]).

Finally, reviewing the award of counsel fees to plaintiff, a discretionary determination requiring the consideration of the financial circumstances of both parties together with all the other circumstances of the case (*see Johnson v Chapin*, 12 NY3d 461, 467 [2009]; *DeCabrera v Cabrera-Rosete*, 70 NY2d 879, 881 [1987]; *Matter of Ballard v Davis*, 259 AD2d 881, 885 [1999], *lv denied* 94 NY2d 751 [1999]), we find no error. Considering the income imputed to defendant as a result of his earning potential and his interests in real property, he is in a better financial position than plaintiff who, having not been employed for more than 20 years while raising the children, just began a new job and has not yet realized any income additional to that which she receives from her trust accounts. Furthermore, defendant failed to pay court-ordered support and maintenance during the seven months leading up to the trial, thereby leaving plaintiff to bear the burden of all household, child and living expenses. Contrary to defendant's contention, "[t]he mere fact that plaintiff may have been able to pay her own fees is but one factor to be considered" (*Vicinanzo v Vicinanzo*, 193 AD2d 962, 966 [1993]; *see Laura WW. v Peter WW.*, 50 AD3d 1292, 1292-1293 [2008]; *Mac Murray v Mac Murray*, 187 AD2d 840, 841 [1992]). Under these circumstances, we cannot say that Supreme Court's decision to award plaintiff counsel fees constituted an abuse of its considerable discretion (*see Bellinger v Bellinger*, 46 AD3d 1200, 1203 [2007]; *Dane v Dane*, 260 AD2d 817, 818-819 [1999]).

Defendant's remaining contentions, to the extent not specifically addressed herein, have been reviewed and found to be lacking merit.

Spain, Malone Jr. and Egan Jr., JJ., concur. Ordered that the judgment is modified, on the facts, without costs, by vacating the conclusions of law regarding the distribution of plaintiff's

RBC Wealth Management account; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.