◼ Tina Roberto, Respondent-Appellant, v Kevin Roberto, Appellant-Respondent. [936 NYS2d 337]—

Stein, J.

Plaintiff (hereinafter the wife) and defendant (hereinafter the husband) were married in 1980 and have one child (born in 1986). Shortly after the husband left the marital residence in September 2008, the wife commenced this divorce action requesting, among other things, equitable distribution of the parties' marital property and counsel fees, and she subsequently made an application for maintenance. The husband did not challenge the wife's grounds for divorce. After a nonjury trial on the issues of equitable distribution, maintenance and counsel fees, Supreme Court granted the wife a divorce and directed, among other things, that the parties equally divide their real property, that the husband pay maintenance to the wife for a total of six years[1] and that the husband pay counsel fees on behalf of the wife in the amount of $10,000. The parties now cross-appeal and we affirm.

We begin with a brief financial history of this marriage. The parties were married for approximately 28 years at the time of the commencement of this action; the husband was then 49 years of age and the wife was 47 years of age. Although they were each employed full time after the birth of their child, they were able to share child-care responsibilities by working different shifts. They initially purchased a home for $45,000, to which the husband made improvements with the wife's assistance. They subsequently sold that home at a substantial profit and built the marital residence in Ulster County; that property had a value of $650,000 at the time of trial. In August 2008, the parties purchased a condominium in Miami, Florida for $425,000, partially financing the purchase with a $300,000 home equity loan against the marital residence. The parties stipulated that the value of the condominium was $355,000 as of the date of trial.

1. Supreme Court directed the husband to pay the wife $500 weekly until the marital residence was sold and $100 weekly thereafter until May 31, 2015.

Throughout much of the marriage, the wife earned approximately $20,000 to $30,000 per year, but was laid off on two occasions. During one layoff period, she obtained an insurance broker's license. The husband worked as a window and door installer and ultimately began his own business—KJR Window Concepts, Inc.—for which he performed installations for Home Depot customers and also contracted out jobs to independent contractors. In 2005, the wife left her job at an insurance company to work from home for KJR doing bookkeeping, answering telephones, fielding customer complaints and faxing orders to the independent contractors. Although the parties' tax returns reflected modest wages, the wife testified that the majority of the parties' personal expenses were paid by KJR. The record demonstrates that the parties were able to live mortgage-free in a $650,000 home, drive expensive luxury cars and vacation extensively.

After the husband moved out of the marital residence in September 2008, the wife continued to run the business and the husband continued to perform installations. According to the wife, the husband agreed that she would be entitled to receive the income generated by the business through the work of the independent contractors and she apparently paid herself over $13,000 between September and November 2008. In December 2008, the husband moved to the Florida condominium with his paramour and ceased performing installations for KJR. The wife testified that she continued working, the independent contractors performed installations as needed and the husband agreed that she would be paid $1,000 per week.

The husband returned to New York in April 2009 and resumed performing installations for Home Depot through KJR. The following month, after working for several weeks without receiving payment therefor from the wife and upon discovering the amount of checks written by the wife over the previous several months, he took control of the business checking account and arranged to have its mail forwarded to his new address. At that point, the wife, allegedly unable to continue to perform her duties and assuming that the husband no longer intended to pay her, stopped working for the business and began collecting unemployment.[2] She was unemployed as of the date of trial, although she was in the process of starting her own window installation business. The husband continued performing installations for Home Depot and hired a bookkeeper for KJR. However,

---

2. Although Supreme Court ordered the husband to pay temporary maintenance to the wife in June 2009, he did not make any such payments until October 2009, shortly after the commencement of the trial.

in July 2009, he received a letter from Home Depot terminating its relationship with KJR effective in October 2009. The husband paid himself $22,000 in August 2009. At the time of the trial, he was finishing his last Home Depot job and was planning to permanently move to Florida with his paramour.

When equitably distributing marital property, the court must consider a variety of factors including, among others, "the income and property of each party at the time of marriage, and at the time of the commencement of the action; . . . the loss of health insurance benefits upon dissolution of the marriage; . . . any award of maintenance . . . ; . . . the probable future financial circumstances of each party; [and] the wasteful dissipation of assets by either spouse" (Domestic Relations Law § 236 [B] [5] [d]; see Noble v Noble, 78 AD3d 1386, 1387-1388 [2010]). Here, both parties take issue with Supreme Court's determination that the marital residence and the Florida condominium should be sold and the proceeds divided equally. The husband contends that he should have received a larger share of the value of the marital assets—because, among other things, he was primarily responsible for the construction of the marital residence and performed the majority of the work for KJR—and that Supreme Court erred in finding that he had wastefully dissipated marital assets. Conversely, the wife argues that, based upon the husband's wasteful dissipation of KJR, the marital residence should have been awarded to her in its entirety, with the remainder of the parties' assets being divided equally.

It is apparent that, in making its determination, Supreme Court properly considered the appropriate statutory factors and applied them to the evidence. For example, while it is undisputed that the husband performed much of the physical labor in connection with the construction of the marital residence, the evidence also demonstrated that the wife provided substantial assistance in a variety of ways. Likewise, the record supports the court's findings that the wife made significant contributions to KJR and that the marriage "was a true economic partnership" until the husband moved out of the marital residence. The court also discredited the husband's testimony that the loss of business from Home Depot was economically driven, and reasonably inferred that it was a result of the husband's abandonment of KJR from December 2008 to April 2009, and his subsequent exclusion of the wife from its operation, which constituted a wasteful dissipation of marital assets.[3] Contrary to the husband's contention, Supreme Court recognized that the parties withdrew

3. Notably, Supreme Court commented in its decision that certain testimony of the husband "totally destroyed his credibility."

corporate funds at the times during which they were each, respectively, in control of the checkbook. The court also considered the duration of the marriage, the marital standard of living and the probable future financial circumstances of the parties—including the wife's loss of health insurance—in making its equitable distribution award. Given the substantial deference we accord trial courts in fashioning an award of equitable distribution (*see Stahl v Stahl*, 80 AD3d 932, 933 [2011]; *Noble v Noble*, 78 AD3d at 1388; *Altieri v Altieri*, 35 AD3d 1093, 1094, 1095 [2006]), we find no basis to disturb Supreme Court's distribution of the marital assets here.

We also reject both the wife's argument that Supreme Court should have awarded her permanent maintenance and the husband's contention that any award of maintenance was error. It is well settled that " '[t]he purpose of maintenance is to provide financial support for the recipient spouse while he or she gains the skills and employment necessary to become self-sufficient' " (*Dowd v Dowd*, 58 AD3d 1057, 1058 [2009], quoting *Zwickel v Szajer*, 45 AD3d 1222, 1223 [2007]; *accord McAuliffe v McAuliffe*, 70 AD3d 1129, 1134 [2010]). The amount and duration of a spousal maintenance award is within the sound discretion of Supreme Court (*see St. Louis v St. Louis*, 86 AD3d 706, 709 [2011]), after consideration of the enumerated statutory factors, as well as the marital standard of living (*see* Domestic Relations Law § 236 [B] [6] [a]; *Hartog v Hartog*, 85 NY2d 36, 50-51 [1995]; *St. Louis v St. Louis*, 86 AD3d at 709).

Here, in awarding the wife durational maintenance, Supreme Court considered, among other things, the duration of the marriage, the parties' ages, their predivorce standard of living, the disparity between their respective earning capacities,[4] the wife's ability to become self-sufficient through the utilization of her insurance license and her experience in the window installation business, the husband's wasteful dissipation of marital assets, and the parties' income and property, including the award of equitable distribution.[5] In our view, the award of durational maintenance was a sound exercise of the court's discretion and we decline to disturb it (*see Keil v Keil*, 85 AD3d 1233, 1238 [2011]).

Nor do we discern any abuse of discretion in the counsel fee award to the wife in view of, among other things, the disparity

---

4. Based upon testimony of the husband as to his past earnings as an independent contractor and the income of the installers who had worked for him, Supreme Court imputed income to the husband of $80,000 per year.

5. Supreme Court specifically noted that, in addition to the division of the real property, each party received one half of certain IRA accounts and other liquid assets.

in the parties' earning abilities and defendant's conduct throughout these proceedings including, but not limited to, his failure to pay maintenance to the wife as directed, which necessitated a contempt application (*see Noble v Noble*, 78 AD3d 1390; *Bellinger v Bellinger*, 46 AD3d 1200, 1203 [2007]).

The parties' remaining contentions have been considered and are unavailing.

Spain, J.P., Rose, Malone Jr. and Egan Jr., JJ., concur. Ordered that the judgment is affirmed, without costs.