Garry, J.
The husband commenced this divorce action in 2005. Following a lengthy trial, Supreme Court, among other things, granted exclusive possession of the marital residence to the wife until the emancipation of the youngest child, ordered the equitable distribution of a motorcycle and the rental income from the Queens County property, and directed the husband to pay weekly child support and — beginning upon the youngest child’s emancipation — monthly maintenance to the wife for 10 years or *1321 until she remarries. The court further continued the prior order directing the husband to pay 75% of the unreimbursed medical expenses, and also required him to pay the wife a lump sum representing one half of certain wasted marital assets, to maintain life insurance policies and to provide college funds for the unemancipated children. The husband appeals.
Initially, we find that denying the husband a credit for the premarital value of the Queens County property was within Supreme Court’s discretion. The transfer of that property into joint ownership created a presumption that it was marital property, placing the burden upon the husband to rebut this presumption with clear and convincing proof that the transfer was solely a matter of convenience (see Campfield v Campfield, 95 AD3d 1429, 1430 [2012], lv dismissed 20 NY3d 914 [2012]; Burtchaell v Burtchaell, 42 AD3d 783, 787 [2007]). Here, the husband’s testimony regarding the Queens County property— characterized by Supreme Court as evasive and questionable— failed to rebut the presumption (see Currie v McTague, 83 AD3d 1184, 1185 [2011]). The entire Queens County property was thus part of the parties’ marital property and subject to equitable distribution and the court’s “substantial discretion in fashioning an award” (Lurie v Lurie, 94 AD3d 1376, 1378 [2012]; see Quinn v Quinn, 61 AD3d 1067, 1069 [2009]; Domestic Relations Law § 236 [B] [5] [c], [d]). While a credit is often given for the value of the former separate property (see Lurie v Lurie, 94 AD3d at 1377-1378; Milnarik v Milnarik, 23 AD3d 960, 962 [2005]; Myers v Myers, 255 AD2d 711, 716 [1998]), such credit is not strictly mandated since the property is no longer separate, but is part of the total marital property. “There is no single template that directs how courts are to distribute a marital asset that was acquired, in part or in whole, with separate property funds” (Fields v Fields, 15 NY3d 158, 167 [2010]). Upon review of the record and the entirety of the equitable distribution award, we are unpersuaded that Supreme Court abused its discretion relative to the Queens County property.
For similar reasons, Supreme Court did not err in ordering the liquidation and equal division of the parties’ Verizon stock. The husband testified that he owned at least some of this stock before the marriage, but offered no specific evidence supporting this claim. Most significantly, all of the stock was placed in joint ownership during the marriage. The husband was thus required to rebut the resulting presumption that this asset was marital property by clear and convincing evidence, and his mere assertion that he objected to this transfer did not meet that signifi *1322 cant burden (see Burtchaell v Burtchaell, 42 AD3d at 787; Chiotti v Chiotti, 12 AD3d 995, 996-997 [2004]). As to the husband’s claim that Supreme Court should have considered the tax consequences of this order, the record reveals no request for such consideration nor evidence upon which such an analysis could have been based (see Cameron v Cameron, 51 AD3d 1165, 1166 [2008], lv denied 11 NY3d 702 [2008]; Vicinanzo v Vicinanzo, 193 AD2d 962, 968 [1993]).
Next, the husband challenges the maintenance award. The amount and duration of this award are addressed to the sound discretion of the trial court, and will not be disturbed provided that the statutory factors and the parties’ predivorce standard of living are considered (see Domestic Relations Law § 236 [B] [6] [a]; Biagiotti v Biagiotti, 97 AD3d 941, 942 [2012]; Roberto v Roberto, 90 AD3d 1373, 1376 [2011]). Here, in reviewing the pertinent factors, Supreme Court placed particular emphasis on the persistent significant disparity in the parties’ incomes, the wife’s limited prospects for increased earnings, and the lost income, earning capacity and retirement savings that she incurred by remaining out of the paid work force to raise the parties’ children for approximately 17 years during the marriage. In this regard, the court credited the wife’s testimony that the husband demanded that she stay at home with the children during this time. Thus, given that “the marriage is of long duration, the recipient spouse has been out of the work force for a number of years [and] has sacrificed her . . . own career development or has made substantial noneconomic contributions to the household or to the career of the payor” (Ndulo v Ndulo, 66 AD3d 1263, 1265 [2009]), we find Supreme Court’s decision to render an award of maintenance well supported by the record (see O’Connor v O’Connor, 91 AD3d 1107, 1108-1109 [2012]; Brzuszkiewicz v Brzuszkiewicz, 28 AD3d 860, 862 [2006]).
Nonetheless, the structure of the award is inappropriate, as it is wholly deferred until the child support payments cease. Awards of maintenance and child support are based on interrelated factors, but do not serve the same purposes; maintenance is intended for the support of the recipient spouse, while child support is paid for the “care, maintenance and education of any unemancipated child” (Domestic Relations Law § 240 [1-b] [b] [2]; see Roberto v Roberto, 90 AD3d at 1376). Further, because the interrelated factors upon which awards of support and maintenance are based may change in unanticipated ways, it is inappropriate to provide for future increases or decreases in maintenance “[e]xcept when a judgment provides for an im *1323 minent and measurable change” (Majauskas v Majauskas, 61 NY2d 481, 494 [1984]). Thus, Supreme Court erred in delaying the commencement of the maintenance obligation until the child support payments terminate, and remittal is required for reconsideration of the appropriate amount and duration of the award, and for recalculation of the child support award if required by any resulting adjustments in the parties’ income for this purpose (see O’Brien v O’Brien, 88 AD3d 775, 777-778 [2011]; Landgraf v Neuhaus, 77 AD3d 590, 590 [2010]; Dawson v Dawson, 152 AD2d 717, 720-721 [1989]).
Additional issues are posed relative to child support. During the course of the trial, which began in 2007 and ended in 2010, the husband moved for pendente lite reduction of the 2004 child support order based upon the emancipation of the parties’ older two children in February 2008 and September 2010, respectively.[1] Supreme Court denied pendente lite relief, stating that appropriate modifications would be made at the conclusion of the action. The findings of fact and conclusions of law issued following the trial continued the 2004 child support order in full force and effect, but recognized the emancipations by reducing the applicable percentage to reflect support for three children as of February 2008, and for two children as of September 2010. As the husband had paid support for the four children throughout the pendency of the action, the court held that he was entitled to credit for overpayments in 2008, 2009 and 2010. The husband now contends that Supreme Court erred in basing the child support on the parties’ incomes in 2004, rather than as revealed in the most recent tax returns. We disagree. The husband bore the burden of establishing a substantial change in circumstances requiring downward modification of the prior order (see Domestic Relations Law § 236 [B] [9] [b]; Cheney v Cheney, 86 AD3d 833, 835 [2011]; Cynoske v Cynoske, 8 AD3d 720, 722 [2004]), and emancipation was the only change in circumstances that he alleged. “[A] child support obligation turns on a parent’s ability to provide support, rather than the parent’s current financial situation” (Matter of Freedman v Horike, 68 AD3d 1205, 1206 [2009], lv dismissed and denied 14 NY3d 811 [2010]; see Matter of Heyn v Burr, 6 AD3d 781, 782 [2004]). The husband made no showing of “an unexpected and unreasonable change in circumstances” that altered his ability to provide support after 2004 (Matter of Kelly v Schoonbeck, 34 AD3d 1094, 1096 [2006]; see Matter of Broome County Support Collection *1324 Unit v Corey, 44 AD3d 1128, 1130 [2007]).[2] Accordingly, we find no error in Supreme Court’s choice to continue the terms of the existing child support order, with limited modifications to reflect the emancipation (see Family Ct Act § 462; compare Zwickel v Szajer, 47 AD3d 1157, 1157 [2008]).
For the same reasons, we reject the husband’s contention that Supreme Court erred in continuing the prior direction relative to unreimbursed medical expenses rather than recalculating his pro rata share based on more recent figures (see Domestic Relations Law § 240 [1-b] [c] [5] [v]; Matter of Lewis v Redhead, 37 AD3d 469, 470 [2007]). However, we further note that the court’s directions regarding credit for the husband’s overpayments were not included within the final judgment of divorce and, thus, the judgment must be modified to correct this omission and the matter remitted for determination of whether any credit is due to the husband for any additional overpayments potentially made in 2011 prior to entry of the final judgment. Finally, we agree with the husband that, as he makes substantial child support payments and thus meets a significant portion of the unemancipated children’s financial needs, Supreme Court’s determination regarding tax exemptions should be modified to permit him to claim one child annually as an exemption on his tax returns (see Rich-Wolfe v Wolfe, 83 AD3d 1359, 1361 [2011]; Quinn v Quinn, 61 AD3d 1067, 1070 [2009]).
Next, Supreme Court did not err in deferring the sale of the marital residence until the emancipation of the parties’ youngest child. The wife is the custodial parent, the husband did not establish that he was in immediate need of his share of the proceeds of such a sale, and the record reveals that the husband was best able to find an alternate residence and the wife was financially able to manage the costs of the marital residence, having done so without assistance from the husband throughout the pendency of the divorce (see Sember v Sernber, 72 AD3d 1150, 1151 [2010]; Nissen v Nissen, 17 AD3d 819, 820 [2005]).
Supreme Court further properly directed the husband to pay the wife one half of the value of certain wastefully dissipated marital assets (see Domestic Relations Law § 236 [B] [5] [d] [12]; Roberto v Roberto, 90 AD3d at 1375). The husband admitted that he cashed some of the parties’ United States savings *1325 bonds while the divorce was pending, and the issues posed by his inconsistent testimony as to the value of these bonds, as well as his claim that the wife cashed additional bonds by forging his signature, were for Supreme Court to resolve (see Rosenkranse v Rosenkranse, 290 AD2d 685, 687 [2002]; Butler v Butler, 256 AD2d 1041, 1044 [1998], lv denied 93 NY2d 805 [1999]).[3] We find no abuse of the court’s considerable discretion in assessing the credibility of these claims (see Noble v Noble, 78 AD3d 1386, 1388 [2010]; Altieri v Altieri, 35 AD3d 1093, 1095 [2006]).
We reject the husband’s contention that Supreme Court improperly ordered him to obtain life insurance without imposing a reciprocal obligation on the wife. A trial court may, in its discretion, secure payments for the support of a dependent spouse or unemancipated children by requiring the purchase of insurance on the life of a spouse who is obliged to make such payments (see Domestic Relations Law § 236 [B] [8] [a]; Hartog v Hartog, 85 NY2d 36, 50 [1995]; Holterman v Holterman, 307 AD2d 442, 442-443 [2003], affd 3 NY3d 1 [2004]). The wife had no such obligation to be secured.
The husband next objects to Supreme Court’s judgment directing him to pay $2,500 each semester toward college costs for the unemancipated children. A court may require a parent to make payments toward college costs upon a finding of special circumstances, a determination that is based upon the payor spouse’s financial status, the educational background of both parents and the academic ability of the children (see Domestic Relations Law § 240 [1-b] [c] [7]; McAuliffe v McAuliffe, 70 AD3d 1129, 1133-1134 [2010]; Brough v Brough, 285 AD2d 913, 916-917 [2001]). Here, the court made no such finding, but the record is sufficiently well developed to permit us to exercise our independent authority to review the evidence on this issue (see generally Matter of Friar Tuck Inn of Catskills v Town of Catskill, 2 AD3d 1089, 1089-1090 [2003]), and we find that the requisite special circumstances exist. At the time of trial, one of the parties’ emancipated children was enrolled in college, and the older of the two unemancipated children, a high school senior, was planning to attend college after graduation. The parties’ long-standing intention to assist their children with college costs was revealed by the husband’s testimony that their original purpose in buying the previously discussed savings bonds— which were purchased over a period of many years — was to es *1326 tablish college funds for the children. As to ability to pay, the husband’s income, as previously noted, is substantially greater than the wife’s income. Given her limited resources and the parties’ mutual commitment to their children’s education, there was no abuse of discretion in ordering the husband to contribute to college costs (see Matter of Healey v Healey, 190 AD2d 965, 968 [1993]).[4]
Supreme Court did not err in directing the sale of a motorcycle and equal division of the proceeds, as the husband testified that the motorcycle was purchased during the marriage with marital funds (see Domestic Relations Law § 236 [B] [1] [c]; Cease v Cease, 72 AD3d 1450, 1451 [2010]). As to his claim that he should have been separately credited for payments he made on the purchase loan for the motorcycle after the divorce action was commenced, the record includes no documentation of any such payments, and his testimony on this subject was insufficiently specific to permit a determination as to whether such payments were made and, if so, in what amount.
Finally, Supreme Court did not abuse its discretion by ordering the husband to pay one half of the rental income from the Queens County property to the wife until the sale of the property, without deducting therefrom any expenses or carrying charges. The husband’s sole responsibility for expenses related to the Queens County property is balanced by the wife’s sole responsibility for the expenses of the marital residence, which— unlike the Queens County property — produces no income. Further, the husband acknowledged that he incurred substantial losses by choosing to leave the property vacant for several years, took full deductions for these losses on his income tax returns without sharing them with the wife, and did not advise the wife or share rentals with her when the property was rented again in 2009. In view of all the circumstances, this aspect of the award was not an abuse of the court’s discretion (see Lurie v Lurie, 94 AD3d at 1378; Owens v Owens, 288 AD2d 782, 783 [2001]).
Mercure, J.P., Rose, Lahtinen and Kavanagh, JJ., concur. Ordered that the judgment is modified, on the law and the facts, without costs, by (1) reversing so much thereof as awarded defendant monthly maintenance for a 10-year period commencing upon the emancipation of the parties’ youngest child and so much thereof as based the calculation of the parties’ income for child support purposes upon the deferred maintenance obliga *1327 tion, (2) granting plaintiff the right to claim one of the parties’ children as an exemption for federal and state income tax purposes, and (3) granting plaintiff credits in the amount of $6,515 for child support overpayments in 2008, 2009 and 2010, and an additional credit for child support overpayments in 2011, if any; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court’s decision; and, as so modified, affirmed.

. Neither this application nor a prior pendente lite motion for downward modification of child support, apparently made by the husband in 2006, were included in the record.

. Notably, the record reveals that a primary reason for fluctuations in the husband’s income during the pendency of the action was his decision not to rent the Queens County property; this choice does not warrant a reduction of his child support obligation (see Matter of Bianchi v Breakell, 48 AD3d 1000, 1003 [2008]; Hall v Hall, 22 AD3d 979, 981 [2005]).

. The husband does not challenge Supreme Court’s additional determination that he wasted marital assets by withdrawing approximately $7,000 from a joint checking account.

. Contrary to the husband’s claim, no windfall to the wife will result if tuition in any semester is less than $2,500, as the judgment expressly directs that any such excess be applied solely to college-related expenses.