■ RICHARD VERTUCCI, Appellant-Respondent, v SHERRI VERTUCCI, Respondent-Appellant. [962 NYS2d 382]—

Lahtinen, J. Cross appeals from a judgment of the Supreme Court (Reilly Jr., J.), entered October 4, 2011 in Montgomery County, among other things, ordering equitable distribution of the parties' marital property, upon a decision of the court.

The parties were married in August 1988, they are the parents of three children (born in 1991, 1995 and 1998), and this divorce action was commenced in August 2007. Plaintiff (hereinafter the husband) owns 49% of the shares in Gabriel Contractors,

which was started in the 1950s by his now deceased father, Gabriel Vertucci. He co-owns the company with his brother, Terence Vertucci. The value of the husband's share in this business as of the commencement date of the divorce action was agreed to be $490,000. He also operates a car wash business known as Robo North, which is marital property comprised of two corporations, RAJ Realty, Inc. and Robo North Self Service, Inc., with a stipulated combined fair market value of $1,250,000 minus indebtedness. Defendant (hereinafter the wife) is an attorney whose third year of law school occurred during the marriage and who established a private practice while married. The expert retained by the parties valued her enhanced earning capacity attributable to her law degree as $398,000, with $131,000 as the marital portion, and the value of her practice as of August 2007 was set at $92,000. They owned a marital home with an agreed value of $600,000 that was encumbered by a mortgage and home equity loan. They also owned various other assets. In 2008, the husband's adjusted gross income was $313,822 and the wife's was $98,426.

The husband brought this action seeking a divorce on the ground of abandonment and the wife counterclaimed asserting, among other things, cruel and inhuman treatment. The parties stipulated to some issues, including that the wife would receive the marital home and the husband would receive Robo North, both subject to various adjustments in value. Despite the stipulation, a multi-day trial was necessary on numerous issues.

Supreme Court granted the wife a divorce on the ground of the husband's cruel and inhuman treatment. After deducting for debt, determining valuation issues, and addressing assertions regarding separate property, Supreme Court made a gross distributive award to the wife of $618,850.50, which was comprised of her distributive portion of Robo North ($434,414.50), Gabriel Contractors ($173,186) and two parcels ($3,750 and $7,500). Credits reducing the wife's distributive award totaled $230,109.60, consisting of the husband's share of the marital residence ($188,164.82), the wife's law license and enhanced earnings ($33,450), 24% of the oldest child's college expenses ($6,407.28) and an agreed forensic fee ($2,087.50). The court also awarded the wife one half the value, to be determined, of a sealer trailer. The distributive award of $388,740.90 (plus one half the sealer trailer) was to be paid in monthly installments over six years. Additionally, property where a former car wash had been located had been sold during the time that this action was pending and the proceeds held in escrow. Supreme Court determined that this was marital property and directed

that the wife receive $10,766.46, which was one half of the amount held in escrow.

The husband was directed to pay weekly child support of $350 for the youngest child, who was the only child living with the wife. The wife sought reimbursement for counsel fees of $85,000 that she had incurred before undertaking her own representation. Supreme Court awarded her $25,000 in counsel fees. Both parties appeal raising issues about the grounds of the divorce, distribution of property, counsel fees and child support.

First we address the grounds argument. The husband contends that he should have been granted a divorce on the ground of abandonment. We are not persuaded. Conflicting proof at trial on the competing fault grounds alleged by the parties created credibility issues. Supreme Court, as the trier of fact, is "given great deference in the resolution of credibility issues" (*Delliveneri v Delliveneri*, 274 AD2d 798, 798 [2000], *lv denied* 95 NY2d 767 [2000]; *see Holmes v Holmes*, 25 AD3d 931, 932 [2006]). The court, noting that there were elements of truth in each party's testimony, described the difficult and close issue it faced based on the proof presented. The proof regarding grounds was sometimes salacious and often demeaning of the other party revealing a marriage that, as stated by Supreme Court, had emotionally ended long before this action was commenced. Supreme Court set forth in ample detail its findings and its reason for granting a divorce to the wife based upon the husband's cruel and inhuman treatment. Deferring to Supreme Court's credibility determinations in making those findings, the record supports its decision.

Both parties assert numerous challenges to various aspects of Supreme Court's distributive award. Some established general principles are pertinent to many of the parties' arguments. " '[T]here is no requirement that the distribution of each item of marital property be on an equal or 50-50 basis' " (*Quinn v Quinn*, 61 AD3d 1067, 1069 [2009], quoting *Arvantides v Arvantides*, 64 NY2d 1033, 1034 [1985]). "A trial court has substantial discretion to fashion such awards based on the circumstances of each case, and the determination will not be disturbed absent an abuse of discretion or failure to consider the requisite statutory factors" (*Williams v Williams*, 99 AD3d 1094, 1096 [2012] [citations omitted]; *see Keil v Keil*, 85 AD3d 1233, 1234 [2011]). Credibility determinations by the trial court are accorded deference (*see e.g. Lurie v Lurie*, 94 AD3d 1376, 1378 [2012]).

The husband argues that a $100,000 loan from Gabriel Contractors should have been calculated as a marital debt, which can serve as an "offset against the total marital assets to

be divided" (*Jonas v Jonas*, 241 AD2d 839, 840 [1997] [internal quotation marks and citation omitted]). He related that he asked his father for money and, even though his father was no longer an officer or shareholder of Gabriel Contractors, his father gave him a check from the company in 2004 for $100,000. There were no written terms and the oral condition reportedly was that his father "want[ed] some of it back" when he got back "on [his] feet." The absence of written documentation and the ambiguous nature of the alleged oral terms essentially created a credibility question. There is no reason in this record not to accept Supreme Court's credibility determination and its resolution of this issue. The husband's further contention that his interest in Gabriel Contractors should have thus been recalculated based on the $100,000 is unavailing. The parties set forth stipulated values regarding Gabriel Contractors and Supreme Court used the figures provided by the parties.

The wife asserts that all of the husband's interest in Gabriel Contractors should have been classified as marital property. We cannot agree. Supreme Court found that the husband's 49% interest was a gift to him from his father and that he had obtained such interest by 1988 to 1990. Using stipulated figures, the court awarded the wife $173,186 for the company's appreciation thereafter during the marriage. While the husband's father ostensibly ran aspects of the company in a rather informal fashion, creating a lack of pertinent contemporaneous written documents, there was nevertheless sufficient testimony and evidence supporting Supreme Court's determination.

While this action was pending, the husband and his brother sold property they owned on Edson Street in the City of Amsterdam, Montgomery County. The husband's share of the sale proceeds was $21,532.92, which was held in escrow by his attorney. He argues that Supreme Court erred in finding that this was marital property and directing that the wife receive one half ($10,766.46). The parcel was acquired in 1992, which was during the marriage, and thus it was presumptively marital property (*see Batease v Batease*, 71 AD3d 1344, 1345 [2010]; *Dashnaw v Dashnaw*, 11 AD3d 732, 733 [2004]). No transfer tax was paid for the transaction, and the husband testified that the property was a gift from his father. The wife, however, testified to seeing the husband with "bundles of cash" for his father, and it is undisputed that marital funds were used for various expenses related to the Edson Street property. Under such circumstances, we are not persuaded that Supreme Court erred in determining that the husband failed to rebut the marital property presumption.

The husband asserts that he contributed $97,500 of his separate property toward the purchase of land for the marital residence and that he used $55,000 of separate property toward construction costs. The purchase of the land and the constructing of the house occurred during the marriage and, thus, the residence and land were presumptively entirely marital property. Based on its assessment of the evidence presented, Supreme Court determined that the husband failed to prove that separate funds were used to purchase and construct the marital residence. Further, the partial use of separate funds to acquire a marital asset does not mandate that a credit for separate funds be given (see Fields v Fields, 15 NY3d 158, 167 [2010]; Murray v Murray, 101 AD3d 1320, 1321 [2012]). Supreme Court's determination is supported by the evidence and its decision regarding the marital residence was within its discretion.

Both parties assert arguments regarding Robo North. The husband contends that Robo North should have been valued as of the date of commencement. The wife argues that she should have received half the net income of Robo North from the date of commencement until the judgment of divorce. The parties' stipulation provided values for Robo North as of August 2007 and December 2008, with the latter being higher because of reduced indebtedness. Supreme Court acted within its discretion in using December 2008 (see e.g. Bean v Bean, 53 AD3d 718, 720 [2008]), and its decision not to allow the wife continued net income was, as the court explained, consistent with the terms of the parties' stipulation.

We find no merit in the wife's contention that the husband's share in property at 35 Prospect Street in the Village of Fort Johnson, Montgomery County, where the Gabriel Contractors' shop was located, should have been treated as marital property. Although the property was transferred in 1992 during the marriage, nevertheless there was extensive evidence establishing that this was a gift from the husband's father to his sons. The property was not thereafter commingled with marital property. The property was properly classified as separate (see e.g. Chiotti v Chiotti, 12 AD3d 995, 996 [2004]).

The evidence also amply supports Supreme Court's determination that a 2006 Chevrolet Silverado truck used by the husband was the property of Gabriel Contractors and not his property subject to distribution. The purchase contract listed Gabriel Contractors as the purchaser, and the truck was included on Gabriel Contractors' corporate tax return as depreciable property. However, the record does not support

Supreme Court's finding that the sealer trailer was marital property. Although initially purchased by the husband in his own name, Gabriel Contractors wrote him a check to fully reimburse him and the proof established that the trailer was purchased for and used exclusively in the business.

Individual retirement accounts (hereinafter IRAs) in the wife's name were established during the marriage. There was conflicting testimony as to whether the funds for the IRAs were part of benefits provided to families by Gabriel Contractors or were gifts from the wife's father-in-law, Gabriel Vertucci. The wife contends that the IRAs were gifts to her and should have been treated as her separate property. Since the IRAs were acquired during the marriage, they are presumed to be marital property and the wife had the burden to prove otherwise (*see Judson v Judson*, 255 AD2d 656, 657 [1998]). Supreme Court noted the conflicting testimony regarding the accounts and concluded that the wife failed to meet her burden of establishing that the IRAs were her separate property. We find unavailing her argument that Supreme Court erred.

The husband contends that Supreme Court's awards of 15% of the wife's enhanced earning capacity as a lawyer and 15% of her law practice value were too low. The wife asserts that there should not have been any award for her enhanced earning capacity. The wife was married to the husband during her entire third year of law school and her practice was started during the marriage. There was conflicting testimony regarding the extent of the husband's involvement in matters that contributed to the wife obtaining her law degree and her subsequent starting a private law practice. Supreme Court was in the best position to assess the conflicting testimony and to determine the husband's contribution. The award of 15% was well within its discretion in light of the evidence (*see e.g. Arvantides v Arvantides*, 64 NY2d at 1034; *Quinn v Quinn*, 61 AD3d at 1069-1070).

Next, we turn to counsel fees. Neither party was content with Supreme Court's award of $25,000 counsel fees to the wife. The wife argues that she should have received more and the husband asserts that she should not have been awarded any counsel fees. The award of counsel fees is "a discretionary determination requiring the consideration of the financial circumstances of both parties together with all the other circumstances of the case" (*Noble v Noble*, 78 AD3d 1386, 1390 [2010]; *see Johnson v Chapin*, 12 NY3d 461, 467 [2009]). Supreme Court discussed at length this issue and the reasons for its award, including the emotionally charged and contentious nature of the litigation, the extraordinary amount of time and effort demanded of

counsel, the wife's efforts to reduce her costs by self-representation, and the parties' financial positions. We find no abuse of discretion in Supreme Court's award.

Finally, we address child support. A few preliminary matters on this issue merit mentioning. It is apparent that the children have been amply supported financially by the parties. In the proceedings before Supreme Court, the parties did not litigate child support extensively, instead focusing primarily upon the issues of divorce grounds and property distribution. The wife spent the vast majority of her argument regarding child support contending that she should not be responsible for the oldest child since he was constructively emancipated; an argument that Supreme Court rejected, and the record supports Supreme Court's decision in such regard. Although the combined parental income ceiling increased during the pendency of this action from $80,000 to $130,000 (*see* L 2009, ch 343; Domestic Relations Law § 240 [1-b] [c] [2]; Social Services Law § 111-i [2] [b]), the parties have not challenged Supreme Court's use of $130,000, and that amount is accepted for this case. There is no merit to the wife's contention that the husband waived any right regarding child support simply because he advocated that neither party should be required to pay child support.

Nonetheless, an error in the child support calculation and an omission in addressing retroactive child support require us to remit. The three-step method for determining child support includes: first, determining the parties' total combined income; second, multiplying that amount, up to $130,000, by the appropriate child support percentages and prorating to each parent based on income; and, third, where, as here, the combined income exceeds $130,000, considering the factors in Domestic Relations Law § 240 (1-b) (f) and/or the child support percentage (*see Holterman v Holterman,* 3 NY3d 1, 10-11 [2004]). With respect to the first step, the record supports Supreme Court's use of the income figures of $313,822 for the husband and $98,426 for the wife, resulting in combined parental income of $412,248, as well as respective percentages of 76% for the husband and 24% for the wife.

On the second step, Supreme Court calculated the support for the three children using the child support percentage of 29 (*see* Domestic Relations Law § 240 [1-b] [b] [3] [iii]). However, the children resided in different households* and, under the circumstances, "[t]he basic child support obligation must be

---

* The parties stopped residing together in October 2008. The two youngest continued to reside with the wife until May 2009 and, thereafter, including when the divorce was granted, only the youngest child resided with her.

determined on a per household basis and it is inappropriate to use a percentage which is based on a total number of children living in different households" (*Buck v Buck*, 195 AD3d 818, 818 [1993]; *see Matter of Ryan v Ryan*, 84 AD3d 1515, 1516 [2011]; *McMillen v Miller*, 15 AD3d 814, 816-817 [2005]). Although Supreme Court ultimately made, pursuant to Domestic Relations Law § 240 (1-b) (f), an award reflecting an upward adjustment regarding the income exceeding $130,000 and that amount was within its discretion (*see Holterman v Holterman*, 3 NY3d at 14; *Matter of Cassano v Cassano*, 85 NY2d 649, 655 [1995]), nonetheless remittal is necessary since the use of the per household basis significantly changes the underlying figures in the three-step analysis. The current child support shall remain in effect pending recalculation.

The wife also requested that child support be awarded retroactively to when the husband moved out in October 2008, and her request for child support had been included in her answer and counterclaim (*see generally Burns v Burns*, 84 NY2d 369, 377 [1994]; *Koczaja v Koczaja*, 195 AD2d 693, 693 [1993], *lv denied* 83 NY2d 756 [1994]). Accordingly, the issue of retroactive child support should be addressed on remittal, together with any adjustments pertinent thereto (*see Ungar v Savett*, 84 AD3d 1460, 1461-1462 [2011]; *Hammack v Hammack*, 20 AD3d 700, 703-704 [2005], *lv dismissed* 6 NY3d 807 [2006]; *Lenigan v Lenigan*, 159 AD2d 108, 112 [1990]).

Supreme Court's award of a credit to the husband for 24% of the oldest child's college tuition, which he testified that he had paid in full, was within its discretion and supported by the record (*cf. Chiotti v Chiotti*, 12 AD3d at 997).

Peters, P.J., Garry and Egan Jr., JJ., concur. Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as (1) awarded defendant one half of the value of the sealer trailer and (2) awarded child support; matter remitted to the Supreme Court for recomputation of child support not inconsistent with this Court's decision; and, as so modified, affirmed.